# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 11, 2022        Decided December 20, 2022

No. 21-1139

WATERKEEPERS CHESAPEAKE, ET AL.,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

CONSTELLATION ENERGY GENERATION, LLC, ET AL.,
INTERVENORS

———

Consolidated with 21-1186

———

On Petitions for Review of Orders
of the Federal Energy Regulatory Commission

———

*James S. Pew* argued the cause for petitioners. With him on the briefs were *Paul W. Smail, Brittany E. Wright,* and *Kathleen Riley.*

*Paula Dinerstein* was on the brief for *amici curiae* Maryland State Senator Stephen S. Hershey, Jr., et al. in support of petitioners.

*Carl S. Pavetto* was on the brief for *amicus curiae* National Wildlife Federation in support of petitioners.

*Sandra P. Franco* was on the brief for *amicus curiae* Maryland Charter Boat Association, Inc. in support of petitioners.

*Scott Ray Ediger*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *Matthew R. Christiansen*, General Counsel, and *Robert H. Solomon*, Solicitor.

*Jonathan E.C. May*, Assistant Attorney General, Office of the Attorney General for the State of Maryland, argued the cause for intervenor State of Maryland, Department of the Environment in support of respondent. With him on the brief was *Brian E. Frosh*, Attorney General.

*David W. DeBruin* argued the cause for intervenor Constellation Energy Generation, LLC in support of respondent. With him on the brief was *Zachary C. Schauf.*

*John E. Bies*, Attorney, U.S. Department of Justice, argued the cause for intervenor U.S. Department of the Interior in support of respondent. On the brief were *Todd Kim*, Assistant Attorney General, and *Justin D. Heminger*, Attorney.

Before: SRINIVASAN, *Chief Judge*, MILLETT, *Circuit Judge*, and TATEL, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* TATEL.

TATEL, *Senior Circuit Judge*: This case involves the Federal Energy Regulatory Commission's (FERC) licensing of the Conowingo Dam on the Susquehanna River in Maryland. Under section 401(a)(1) of the Clean Water Act, FERC may issue a license only if the state where the dam is located either certifies that the dam will comply with the Act's water quality standards or waives its authority to do so. After initially granting a section 401(a)(1) certification, Maryland attempted to withdraw it and waive its authority as part of a settlement with the dam's operator, which FERC then used as the basis for the Conowingo license. By issuing a license under such circumstances, FERC exceeded its authority under section 401(a)(1), and we therefore vacate the license and remand to FERC.

## I.

The Federal Power Act authorizes FERC to issue licenses for the operation of hydroelectric projects on navigable waters. 16 U.S.C. § 797(e). The Clean Water Act makes states the "prime bulwark in the effort to abate water pollution, . . . expressly empower[ing] them to impose and enforce water quality standards that are more stringent than those required by federal law." *Keating v. FERC*, 927 F.2d 616, 622 (D.C. Cir. 1991) (internal quotation marks and citation omitted). Accordingly, before applying to FERC for a license to operate a dam, the operator must first obtain state certification of the project under section 401(a)(1) of the Clean Water Act. 33 U.S.C. § 1341(a)(1) ("Any applicant for a Federal license . . . shall provide [FERC] a certification from the State . . . that any

[discharge from the dam] will comply with the [Clean Water Act].").

Section 401(a)(1) gives a state presented with a certification request three options: First, the state can deny the request, in which case "[n]o license or permit shall be granted" by FERC. 33 U.S.C. § 1341(a)(1). Second, the state may grant the request, either in full or with specified "limitations" and "monitoring requirements" that FERC must incorporate into the license. *Id.* §§ 1341(a)(1), (d); *see also Department of Interior v. FERC*, 952 F.2d 538, 548 (D.C. Cir. 1992) (explaining that FERC "may not alter or reject conditions imposed by the states through section 401 certificates"). Or third, the state may "fail[] or refuse[] to act on a request" within a reasonable period and thus "waive[]" its right to certify. 33 U.S.C. § 1341(a)(1). In that situation, the license "shall be granted" by FERC without any input from the state. *Id.*

In 2014, petitioner Constellation Energy Generation, LLC, the Conowingo Dam's operator, submitted a certification request to Maryland's Department of the Environment. Following years of back-and-forth, a public notice and comment period, and a public hearing, Maryland issued a section 401(a)(1) certification in 2018. The certification required Constellation to develop a plan to reduce the amount of nitrogen and phosphorus in the dam's discharge, improve fish and eel passage, make changes to the dam's flow regime, control trash and debris, provide for monitoring, and undertake other measures for aquatic resource and habitat protection. Calling these conditions "unprecedented" and "extraordinary," Constellation challenged the certification in several fora. Constellation Br. 14–16. Specifically, it filed (1) a request to the Maryland Department of the Environment for reconsideration; (2) suits against the state of Maryland in both federal and state court; and (3) a petition to FERC requesting a

"declaratory order" that Maryland had waived its opportunity to issue a certification.

While those proceedings were pending, Maryland and Constellation entered mediation and arrived at a settlement. The settlement agreement contained a series of "proposed license articles," which the parties agreed to jointly submit to FERC for incorporation into the dam's license. "[U]pon, but only upon" FERC's incorporation of the proposed license articles in the Conowingo license, Maryland agreed to "conditionally waive[] any and all rights it had or has to issue a water quality certification." Joint Appendix 588–89. After receiving comments on the settlement, FERC issued a 50-year license, "adopting the Proposed License Articles and only making modifications to ensure that [FERC] can enforce those articles." *Exelon Generation Company, LLC*, 174 F.E.R.C. ¶ 61,217, at 61,979 (2021).

In response, several environmental groups—Waterkeepers Chesapeake, Lower Susquehanna Riverkeeper Association, ShoreRivers, and Chesapeake Bay Foundation (collectively, "Waterkeepers")—filed a petition for rehearing. They argued that Maryland had no authority to retroactively waive its 2018 certification and that FERC therefore exceeded its authority under the Clean Water Act by issuing a license that failed to incorporate the conditions of that certification. Rejecting that argument, FERC ruled that "[t]he settlement agreement makes clear that [Maryland] intended to waive its section 401 authority and nullify the 2018 certification if [FERC] approved the agreement." *Exelon Generation Company, LLC*, 176 F.E.R.C. ¶ 61,029, 2021 WL 3013502, at *3 (2021). In FERC's view, because "[n]othing in the Clean Water Act prevents a state from affirmatively waiving its authority to issue a water quality certification," Maryland's waiver satisfied the requirements of section 401(a)(1) and the Commission had

authority to issue the Conowingo license. *Id.* Waterkeepers petitioned for review, renewing their argument that section 401(a)(1) does not permit retroactive waiver of the kind Maryland has attempted.

## II.

It goes without saying that we begin with the text of section 401(a)(1), asking whether it empowers FERC to issue a license under these circumstances. Our review is de novo, as FERC's interpretation of section 401 "is entitled to no deference by the court because the Environmental Protection Agency, and not [FERC], is charged with administering the Clean Water Act." *Alcoa Power Generating Inc. v. FERC*, 643 F.3d 963, 972 (D.C. Cir. 2011) (citing *Alabama Rivers Alliance v. FERC*, 325 F.3d 290, 296–97 (D.C. Cir. 2003)).

The Clean Water Act provides that "[n]o license or permit shall be granted until the certification required . . . has been obtained or has been waived as provided in the preceding sentence." 33 U.S.C. § 1341(a)(1). The preceding sentence authorizes just two routes to waiver: "fail[ure] or refus[al] to act on a request for certification, within a reasonable period of time." *Id.* If a state has neither granted a certification nor failed or refused to act on a certification request, section 401(a)(1) plainly prohibits FERC from issuing a license. Here, Maryland did not fail or refuse to act. Just the opposite. The state *acted* when it issued the 2018 certification. *See Turlock Irrigation District v. FERC*, 36 F.4th 1179, 1183 (D.C. Cir. 2022) (explaining that "[e]ach time" a state agency denies or grants a certification application, it "act[s] within the meaning of section 401(a)(1)"). Because Maryland's subsequent backtracking in the settlement agreement, in which it "conditionally waiv[ed]" its authority to issue a water quality certification after the fact, is neither a "fail[ure]" nor a

"refus[al]" to act, it cannot qualify as a section 401(a)(1) waiver.

FERC does not argue that section 401(a)(1) expressly authorizes a state that has issued a certification to later waive it. Instead, it contends that "nothing in the Act *prevents* a state from affirmatively waiving its authority to issue a water quality certification before the statutory time period expires or during the pendency of the certification's appeal." FERC Br. 25 (emphasis added). Pressed at oral argument, FERC counsel went so far as to argue that "if we can't conclude that Congress thought of an unnamed [potential course of action]," by resort to legislative or congressional reports, then we must treat the course of action as available to the agency. Oral Arg. Rec. 27:20–30:30. That, however, is not how we interpret statutes. Our court has "repeatedly rejected the notion that the absence of an express proscription allows an agency to ignore a proscription implied by the limiting language of a statute." *Southern California Edison Co. v. FERC*, 195 F.3d 17, 24 (D.C. Cir. 1999). Section 401(a)(1) limits FERC's power to issue a license to two circumstances: (1) where a state has granted a certification; or (2) where the state has waived its authority to certify "as provided in the preceding sentence" by failing or refusing to act. 33 U.S.C. § 1341(a)(1). This leaves no room for FERC's third alternative, in which it issued a license based on a private settlement arrangement entered into by Maryland after the state had issued a certification with conditions but then changed its mind.

## III.

This brings us to the question of remedy. At oral argument, FERC "strenuously urge[d] [us] to consider remand without vacatur" to avoid the "disruptive consequences" stemming from vacating a license that limits the environmental impact of

the Conowingo Dam. Oral Arg. Rec. 40:50–42:25. "The decision whether to vacate depends on the seriousness of the [license's] deficiencies . . . and the disruptive consequences of an interim change that may itself be changed." *Allied-Signal, Inc. v. Nuclear Regulatory Commission*, 988 F.2d 146, 150–51 (D.C. Cir. 1993) (internal quotation marks and citation omitted). Vacatur, however, "'is the normal remedy' when [a court is] faced with unsustainable agency action." *Brotherhood of Locomotive Engineers & Trainmen v. Federal Railroad Administration*, 972 F.3d 83, 117 (D.C. Cir. 2020) (quoting *Allina Health Services v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014)).

Vacatur is appropriate here. As to the seriousness of the license's deficiencies, given that FERC had no statutory authority to issue the license under review, *supra*, at 6–7, there is no "'possibility that [FERC] may find an adequate explanation for its actions'" on remand. *Standing Rock Sioux Tribe v. United States Army Corps of Engineers*, 985 F.3d 1032, 1051 (D.C. Cir. 2021) (quoting *Williston Basin Interstate Pipeline Co. v. FERC*, 519 F.3d 497, 504 (D.C. Cir. 2008)). Neither does the second factor—the disruptive consequences—support remand without vacatur. Although the Conowingo Dam is operational and vacatur may disrupt some of the environmental protections included in the current license, at oral argument FERC's counsel acknowledged that such disruption could be avoided through issuance of interim, annual licenses. Oral Arg. Rec. 43:10–43:40 (agreeing that "whatever the disruptive consequences [FERC is] concerned about" would be "adequately address[ed]" on a year-to-year basis). Equally important, Waterkeepers, which brought this action for the very purpose of strengthening the dam's environmental protections, agrees. Oral Arg. Rec. 1:26:14–1:27:10 (affirming that the "short-term loss of protections"

caused by vacatur can be avoided and that vacatur "in the long run [is] better for the quality" of the dam).

Vacating the license, moreover, will allow completion of the administrative and judicial review that was interrupted by the settlement agreement. *See supra*, at 4–5. That review could result in either (1) the invalidation of Maryland's 2018 certification, which would require Constellation to request a new certification, or (2) the validation of the 2018 certification, which would require FERC to issue a license incorporating the conditions contained therein. Either result would comport with a major goal of the Clean Water Act: to make states the "prime bulwark in the effort to abate water pollution." *Keating*, 927 F.2d at 622 (internal quotation marks and citation omitted).

Accordingly, we vacate the Conowingo license and remand to FERC for further proceedings consistent with this opinion.

*So ordered.*