# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 5, 2006          Decided July 27, 2007

No. 05-1299

EXXON MOBIL CORPORATION
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION AND
UNITED STATES OF AMERICA,
RESPONDENTS

ANADARKO PETROLEUM CORPORATION, ET AL.,
INTERVENORS

———

Consolidated with
05-1300, 05-1301

———

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

———

*Donald B. Craven* argued the cause for petitioners. With him on the briefs was *C. Fairley Spillman*. *Frederick T. Kolb, Douglas W. Rasch*, and *Bruce A. Connell* entered appearances.

*Judith A. Albert*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the

brief were *John S. Moot*, General Counsel, and *Robert H. Solomon*, Solicitor.

*Karol L. Newman* argued the cause for intervenors Anadarko Petroleum Corporation, et al. and *amicus curiae* Legislative Budget and Audit Committee of the Alaska State Legislature in support of respondent. With her on the brief were *Jason B. Tompkins*, *James C. Moffatt*, *Jonathan D. Simon*, and *Donald C. Shepler, Jr.*

*Robert H. Loeffler*, *Edward J. Twomey*, *Seth M. Galanter*, and *David W. Marquez*, Attorney General, Attorney General's Office of the State of Alaska, were on the brief for intervenor State of Alaska.

Before: GINSBURG, *Chief Judge*, and SENTELLE and RANDOLPH, *Circuit Judges*.

Opinion for the court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: The petitioners, which are developing a proposal to build a natural gas pipeline from the North Slope of Alaska to the contiguous United States, seek pre-enforcement review of two regulations promulgated by the Federal Energy Regulatory Commission, 18 C.F.R. §§ 157.36, 157.37. According to the petitioners, the Commission has "asserted authority to condition a certificate of public convenience and necessity on the project sponsor's willingness to allow the Commission to increase the capacity or expandability of the project," and that assertion is invalid on its face because it contravenes the Alaska Natural Gas Pipeline Act (ANGPA), Pub. L. No. 108-324, § 105, 118 Stat. 1258, 1258-59, 15 U.S.C. § 720c, and the Natural Gas Act (NGA), Ch. 556, § 7(a), 52 Stat. 821, 824, 15 U.S.C. § 717f(a). According to the Commission, it has broad authority to condition a certificate of

public convenience and necessity upon the sponsor of a proposed pipeline making a "design change," a term heretofore applied not to a change in capacity but to such matters as "routing, cost allocations, and the design of initial service rates."

Preliminarily, we agree with the parties that this controversy is ripe for review because the issues are purely legal and delaying a decision would inhibit investment in a project the construction of which the Congress has made a priority. As to the merits, we note the Commission has not interpreted § 157.37, which provides that "[i]n reviewing any application for an Alaska natural gas pipeline project, the Commission ... may require changes in project design necess[ary] to promote competition and offer a reasonable opportunity for access to the project," as authority to condition a Certificate upon increasing the capacity of the proposed pipeline, and it may never do so. Nor do we agree with the petitioners that 18 C.F.R. § 157.36, which provides that "[i]n considering a proposed voluntary expansion ... the Commission ... may require design changes to ensure that some portion of the expansion capacity be allocated to new shippers," may reasonably be read to assert authority in the Commission to condition a Certificate upon an increase in the capacity above that proposed by the sponsor of the pipeline. Therefore, we conclude neither § 157.36 nor § 157.37 is facially invalid and accordingly deny the petitions for review.

## I. Background

In 1976, the Congress enacted the Alaska Natural Gas Transportation Act (ANGTA), in which it found there was a "natural gas supply shortage" and encouraged the "expeditious construction" of a pipeline to carry natural gas from Alaska to the "contiguous States of the United States." *See* Pub. L. No. 94-586, § 2, 90 Stat. 2903, 15 U.S.C. § 719. When, 28 years later, the hoped for pipeline still had not been constructed, the

4

Congress passed the ANGPA, which is meant to encourage construction by offering certain government loan guarantees. § 116, 15 U.S.C. § 720n.  The ANGPA also requires that we expedite review of any final order of the Commission made under the authority of that Act, § 107(a)(1), (c), 15 U.S.C. § 720e, and that the Commission expedite consideration of any application for a Certificate, § 103(c), 15 U.S.C. § 720a.  This case concerns regulations the Commission promulgated to govern its issuance of an initial Certificate to build and a subsequent Certificate to expand an Alaska Pipeline.

Under the ANGPA, the Commission is required to promulgate regulations for the conduct of an "open season" designed to "promote competition in the exploration, development, and production of Alaska natural gas." § 103(e)(2)(B).  A potential Alaska Pipeline project sponsor must, during the "open season," allow potential gas producers to bid for the right to ship a specified quantity of gas through the proposed pipeline.  18 C.F.R. § 157.33.  The sponsor then may seek a "certificate of public convenience and necessity" under the NGA, which Certificate the Commission is to issue if it finds the sponsor "able and willing" to perform a service "required by the present or future public convenience or necessity[.]"  NGA § 7(c), (e).  The Commission may attach "such reasonable terms and conditions [to the Certificate] as the public convenience and necessity may require."  NGA § 7(e).  Of particular relevance here, the Commission may require a "natural-gas company" to "extend or improve" or to "establish physical connection of its transportation facilities" with another's facilities but may not "compel the enlargement of transportation facilities for such purposes."  NGA § 7(a).

The petitioners, which lease from the State of Alaska land with about 90 to 95 percent of that State's proven natural gas reserves, intend jointly to apply for a Certificate to build and operate an Alaska Pipeline. Before doing so, however, the petitioners seek review of two regulations promulgated by the Commission pursuant to ANGPA § 103(e)(2), namely, 18 C.F.R. §§ 157.36 and 157.37, that the petitioners read as asserting an authority they say the Commission does not have, to condition the issuance of a Certificate upon the project sponsor increasing the capacity of its proposed pipeline or of a later proposed expansion thereof.

## II. Analysis

Before we reach the merits of this facial challenge to the validity of §§ 157.36 and 157.37, we consider whether the issue is ripe for judicial review. Though the Commission did not raise the issue, "The question of ripeness goes to our subject matter jurisdiction, and thus we can raise the issue sua sponte at any time." *Duke City Lumber Co. v. Butz*, 539 F.2d 220, 221 n.2 (D.C. Cir. 1976).

## A. Ripeness

To determine whether a controversy is ripe, we must consider both the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). At oral argument the Commission agreed with the petitioners that the issue whether the regulations are within the Commission's statutory authority is fit for judicial review. We agree as well, because "the issue tendered is a purely legal one: whether the statute was properly construed." *See id.*

With respect to the hardship to the parties, we agree with

the petitioners that delaying resolution of the issue will tend to inhibit or delay investment in the Alaska Pipeline, contrary to the twice expressed intent of the Congress. The petitioners would remain uncertain whether the Commission may condition the Certificate for which they plan to apply upon their building a pipeline with greater capacity than they will propose. If the petitioners nevertheless seek a Certificate and the Commission deems the capacity for their proposed pipeline too small, resolution then of the issue now before the court will delay the process of certification for at least an additional year. The delay and its attendant cost will be a hardship to the petitioners and, in the unusual circumstances of this case, will also be a cognizable hardship to the Nation as a whole.

The Congress has made unmistakably clear its intention to speed construction of an Alaska Pipeline, starting with its determination in 1976 that "expeditious construction" of a pipeline was in the national interest, ANGTA § 2, followed by its determination in 2004 to provide loan guarantees in order to get the project moving, ANGPA § 116, 15 U.S.C. § 720n, its directive that the court expedite review of regulations issued pursuant to the ANGPA, § 107(a)(1), (c), and its requirement that the Commission expedite consideration of an application for a Certificate to build the pipeline, ANGPA § 103(c). Accordingly, we conclude this matter is ripe for decision.

B. Facial Validity of the Regulations

The petitioners contend the two regulations[*] exceed the

---

[*] Section 157.36 of Title 18 of the Code of Federal Regulations provides:

> Any open season for capacity exceeding the initial capacity of an Alaska natural gas transportation

7

Commission's authority under the NGA and the ANGPA and are arbitrary and capricious in that, if the Commission conditions a Certificate upon the building of a pipeline with capacity greater than that proposed by the sponsor of the project, then the sponsor will bear the additional cost of building a larger pipeline in order to transport gas that has not been and may never be discovered. The petitioners, which as of April 2002

> project must provide the opportunity for the transportation of gas other than Prudhoe Bay or Point Thomson production. In considering a proposed *voluntary expansion* of an Alaska natural gas pipeline project, the Commission will consider the extent to which the expansion will be utilized by shippers other than those who are the initial shippers on the project and, in order to promote competition and open access to the project, *may require design changes* to ensure that some portion of the expansion capacity be allocated to new shippers willing to sign long-term firm transportation contracts, including shippers seeking to transport natural gas from areas other than Prudhoe Bay and Point Thomson. [Emphases added.]

Section 157.37 of the same title provides:

> In reviewing any application for an Alaska natural gas pipeline project, the Commission will consider the extent to which a proposed project has been designed to accommodate the needs of shippers who have made conforming bids during an open season, as well as the extent to which the project can accommodate low-cost expansion, and may require *changes in project design necessity [sic] to promote competition and offer a reasonable opportunity for access to the project.* [Emphasis added.]

had already spent $ 125 million on preliminary feasibility studies, anticipate it will cost hundreds of millions of dollars to prepare an application for a Certificate. They argue that uncertainty over the possibility of footing the bill now to provide capacity for those who might later wish to ship gas on the pipeline could make the project too risky for them or any potential sponsor to undertake, thus thwarting the purpose of the Congress to encourage the construction of an Alaska Pipeline.

The Commission, joined by the Intervenors and the Amicus,[*] argue the Commission has "broad conditioning authority to support findings of public convenience and necessity" per NGA § 7(e), including authority to condition a Certificate upon the sponsor making a "design change." The Commission further contends any such condition would not be "mandatory" because an applicant for a Certificate could simply decline to accept a Certificate so conditioned. *Regulations Governing the Conduct of Open Seasons for Alaska Natural Gas Transp. Projects* (Order 2005-A), 70 Fed. Reg. 35,011, 35,015 ¶ 31. More to the point, the Commission represents that in promulgating §§ 157.36 and 157.37, it "merely codif[ied] ... existing authority and practice," *id.* at 35,015 ¶ 33, which is, where necessary in the public interest, to require "design changes" involving "routing, cost allocations, and the design of

---

[*] Intervenor Anadarko Petroleum Corporation has leased millions of acres of land for gas exploration in the North Slope of Alaska. Intervenor TransCanada Pipelines Limited is the parent of Alaskan Northwest Gas Transportation Company, which will construct and operate the Alaska segment of the Pipeline if a sponsor ever receives a Certificate to build it. Amicus Legislative Budget and Audit Committee of the Alaska State Legislature is responsible for commenting upon contracts proposed by the Governor of Alaska pursuant to the Alaska Stranded Gas Development Act, Alaska Stat. §§ 43.82.010-43.82.990 (2006).

initial service rates."

The Commission believes "there will be only one ... Alaska pipeline for the foreseeable future," which intensifies the "unique and complex competitive conditions" facing an Alaska Pipeline project. Order 2005-A, 70 Fed. Reg. at 35,016 ¶ 36. In § 157.37, therefore, the Commission clearly asserts authority to "require changes in project design necess[ary] to promote competition and offer a reasonable opportunity for access to the project." At oral argument, however, Commission counsel claimed the regulation also authorizes the Commission to require design changes in order to "accommodate low-cost expansion" and thereby promote future competition, but that is not at all clear on the face of the regulation.

In the view of the State of Alaska, authority to ensure the pipeline can "be expanded easily" to accommodate future shippers follows necessarily from the directive of the Congress to the Commission, in ANGPA § 103(e)(2)(B), to promulgate regulations for the conduct of an open season in such a way as to "promote competition in the exploration, development, and production of Alaska natural gas." These objectives are all the more important, we are told by the State, because the Alaska Pipeline will likely pass near areas with large unexplored reserves of natural gas, which may not be brought into production in the future if the pipeline cannot readily be expanded.

At oral argument, Commission counsel conceded, as she could hardly deny, that § 157.36 "does not state the expansion will be increased," and allowed as how the regulation could be read to allow only the "allocation" of such "expansion capacity" as is voluntarily proposed by the sponsor of an extant pipeline. With respect to § 157.37, however, counsel muddied the waters, arguing the Commission could "under certain circumstances"

condition an initial Certificate upon an increase in the capacity of the proposed pipeline in order to ensure the project serves the public convenience and necessity and "promote[s] competition" — though we do not understand the Commission itself to claim authority to order an increase in the initial capacity of the Alaska Pipeline. Commission counsel, like the state of Alaska, nonetheless contends such a reading would be authorized by § 103(e)(2) of the ANGPA.

The petitioners' facial challenge to §§ 157.36 and 157.37 is based upon a misreading of these regulations. They misread § 157.37 as asserting the Commission has authority to condition the issuance of an initial Certificate upon the project sponsor's agreement to build a pipeline capable of carrying more gas than the project sponsor proposes. Even Commission counsel, drawing upon the last clause of the regulation, maintained at oral argument that the regulation could be interpreted to authorize such a condition only in the interest of "promot[ing] competition." The Commission itself has not adopted the reading of § 157.37 the petitioners oppose — which is highly strained — and it may never do so, particularly in view of the prohibition in NGA § 7(a) upon the Commission's authority to "compel the enlargement of transportation facilities." Nor has the Commission adopted their lawyer's less expansive view. Indeed, Commission counsel herself tells us the Commission has never conditioned a Certificate for a non-Alaskan pipeline upon an increase over the capacity proposed, and in promulgating the challenged regulations, the Commission clearly represented that it was "merely codify[ing] [its] existing authority and practice," Order 2005-A, 70 Fed. Reg. at 35,015 ¶ 33, and making them applicable to the Alaska Pipeline. Thus, the Commission appears to have interpreted § 157.37 as authority to condition the issuance of a Certificate only upon the types of design change the Commission has imposed in the past — to wit, changes in routing, cost allocation, and initial rates, 70 Fed. Reg

at 35,015 ¶¶ 31, 33 — which the petitioners do not challenge. Because § 157.37 is capable of several valid applications, *i.e.*, may be invoked to require a design change of the aforementioned sorts, it obviously is not invalid on its face. *See Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 282 F.3d 818, 826-28 (D.C. Cir. 2002) ("That there might be one invalid application is ... far from enough to make the regulation unlawful").

The petitioners misread § 157.36 as asserting the Commission may order an increase in the capacity of a proposed voluntary expansion to an extant Alaska Pipeline. The text of the regulation simply does not support the petitioners' reading. As Commission counsel acknowledged at oral argument, § 157.36 purports only to allow the Commission, in order to introduce new competitors into the market, to allocate such capacity as the sponsor itself proposes to add. So understood, the regulation ensures that a new shipper willing to sign a long-term contract may gain access to a portion of any proposed expansion capacity. Indeed, it would not make sense for the Commission to rely upon § 157.36 to order an increase in expansion capacity above that proposed by the sponsor: ANGPA § 105, 15 U.S.C. § 720c, specifically allows the Commission to order an "expansion of the Alaska natural gas project" when one or more parties so requesting has "execute[d] a firm transportation agreement" with the operator of the pipeline, and the Commission, after notice and the opportunity for a hearing, finds the expansion satisfies eight specific criteria and is, in addition, "required by the present and future public convenience and necessity." This section of the statute would be set to naught if the Commission could order an increase in a proposed expansion upon the strength solely of the regulation.

In sum, the petitioners have not offered any textually supported interpretation of § 157.36 that would exceed the

Commission's authority under the NGA or the ANGPA. Accordingly, we do not find § 157.36 invalid on its face. *Cf. Amfac Resorts*, 282 F.3d at 826-28.

## III. Conclusion

The issues presented in this case are purely legal and ripe for decision. Delaying their resolution would only increase the petitioners' costs and hence diminish the likelihood they will pursue a certificate of public convenience and necessity for an Alaska Pipeline, the construction of which is a priority of the Congress.

On the merits, we hold §§ 157.37 and 157.36 are not facially invalid. The former, by its terms, does not — except in the petitioners' highly strained reading, and in Commission counsel's apparently extempore assertion at oral argument — assert authority to condition approval of a proposal to build an Alaska Pipeline upon an increase in capacity above that proposed by the sponsor. The latter authorizes the Commission to condition approval of a voluntarily proposed expansion upon a different allocation of the added capacity, not upon an increase in that capacity. Accordingly, the petitions for review are

*Denied.*