Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports.  Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 24, 2011          Decided May 3, 2011

No. 10-1066

ALCOA POWER GENERATING INC.,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

STANLY COUNTY, NORTH CAROLINA
AND STATE OF NORTH CAROLINA,
INTERVENORS

———

On Petition for Review of Orders
of the Federal Energy Regulatory Commission

———

*David R. Poe* argued the cause and filed the briefs for petitioner.

*Jennifer S. Amerkhail*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent.  With her on the

brief were *Thomas R. Sheets*, General Counsel, and *Robert H. Solomon*, Solicitor.

*Marc D. Bernstein*, Special Deputy Attorney General, North Carolina Department of Justice, argued the cause for intervenor State of North Carolina in support of respondent. With him on the brief were *Roy Cooper*, Attorney General, *James C. Gulick*, Senior Deputy Attorney General, and *Donald W. Laton*, Assistant Attorney General.

Before: ROGERS and TATEL, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The Alcoa Power Generating Company petitions for review of two orders of the Federal Energy Regulatory Commission with respect to the relicensing of its Yadkin Project facilities in North Carolina pursuant to 16 U.S.C. § 808. A precondition of licensing is receipt of a State certification that any discharges into navigable waters will comply with sections 301-03 and 306-07 of the Clean Water Act, 33 U.S.C. §§ 1311-13, 1316-17. Section 401(a)(1) of the Clean Water Act provides that State certification "shall be waived with respect to such Federal application" if the State certifying agency "fails or refuses to act on a request for certification, within a reasonable period of time (which shall not exceed one year) after receipt of such request . . . ." 33 U.S.C. § 1341(a)(1). When a State administrative law judge stayed pending appeal the water certification issued by the State agency, Alcoa Power petitioned the Commission for a declaratory order that the certifying agency had waived its authority by not issuing a certification that was effective and complete within one year. The Commission denied the petition, ruling there was no waiver because the State had "act[ed] on"

Alcoa Power's application within one year of its filing. *See Alcoa Power Generating Inc.*, 129 FERC ¶ 61,028 (2009) ("*Order*"); *Alcoa Power Generating Inc.*, 130 FERC ¶ 61,037 (2010) ("*Rehearing Order*").

Alcoa Power contends that the Commission misinterpreted the law and the facts and that the State violated the time limit in Section 401(a)(1) by linking the effectiveness of the certification to satisfaction of a bond requirement after the expiration of the one-year period, thereby waiving its right to issue a certification for the project. The Commission maintains that the petition for review is not ripe because, in accordance with its policy, it has not been able to act on Alcoa Power's application for licensure in view of on-going State administrative review and stay of the certification. We hold that the petition is ripe, because if the certification was waived, then the pendency of the State proceeding is no bar to the Commission acting on Alcoa Power's licensing application. *See Rehearing Order* ¶ 15. We agree with the Commission's interpretation of Section 401 in ruling that there was no waiver by the State and, therefore, we deny the petition for review.

## I.

As the expiration of the Yadkin Project's 50-year license approached, Alcoa Power filed an application for a license renewal with the Commission in April 2006. As the hydroelectric project indisputably falls within the scope of Section 401(a)(1) as one that "may result in any discharge into the navigable waters," it requested a Section 401 certification from the North Carolina Department of Environment and Natural Resources on May 10, 2007. The Department's Division of Water Quality issued the water quality certification on November 16, 2007, and Alcoa Power filed it with the Commission on November 30, 2007. Before the Commission

proceeded with licensing, the Division of Water Quality informed Alcoa Power on April 16, 2008 that its previous certification proceeding had failed to provide an adequate opportunity for public comment (as apparently required under State law). Accordingly, the Division of Water Quality revoked the original water quality certification and told Alcoa Power to re-apply.

Alcoa Power complied shortly thereafter, on May 8, 2008, withdrawing and re-filing its previous request. A public hearing was held on January 15, 2009, and the hearing officer submitted a report with findings on May 6, 2009. The Division of Water Quality issued a new certification on May 7, 2009, the last day of the one-year period. This new certification (the "2009 Certification") contained a number of terms and conditions, including a requirement that Alcoa Power undertake various improvement, control, and monitoring measures related to water quality. Importantly, the 2009 Certification also required Alcoa Power or its parent company, Alcoa Inc., to post a surety bond in the amount of $240 million "to cover all water quality improvement costs" related to the Yadkin Project "within ninety days of receipt of the Certification" and to remain posted until a dissolved oxygen water quality standard was met for three consecutive years. The condition further stated that "[t]his Certification is only effective once the required performance/surety bond is in place."

Alcoa Power submitted the 2009 Certification to the Commission the next day, May 8, 2009. Then, on May 27, 2009, a North Carolina administrative law judge issued a preliminary injunction staying the 2009 Certification pursuant to a motion filed by Stanly County, North Carolina, arguing that the Division of Water Quality violated State law by declining to consider certain water quality impacts of the Yadkin Project. Alcoa Power challenged the 2009 Certification in the same State

administrative proceeding on the ground that the bond condition was excessive and impossible to comply with, and that the effectiveness clause in the bond condition violated the time limits for action under State law and Section 401 of the Clean Water Act.

Alcoa Power filed a petition for a declaratory order with the Commission on September 17, 2009. It argued that North Carolina had waived its Section 401 authority by failing to act on the request for certification within one year because the effectiveness clause of the bond condition rendered the "purported certificate . . . incomplete." Pet. for Declaratory Order 1. Issuing a conditional certification on the last day of the statutory deadline, Alcoa Power continued, "ensured that the required bond could not be posted (and, thus, that its certification could not become 'effective') prior to the expiration of the statutory deadline." *Id.* at 4. The Commission ruled that the issued certification was the "act" required by Section 401 irrespective of whether further action was required of Alcoa Power under certification conditions because the State's action was complete upon its issuance of the certification. *Order* ¶ 8.

In seeking rehearing, Alcoa Power argued that the Commission's order was factually and legally unsupported, and also that the bond condition not only could not be satisfied within the one-year period, but that it could *never* be satisfied as written, and that even if a certification that is not effective within one year is valid under Section 401, one that can *never* be effective is not. It attached the affidavit of a bond agent, Charles R. Croyle, who described the terms of the bond condition as "nebulous" and stated that "it would be extremely difficult, if not impossible, to place a bond with those requirements and of that magnitude in the marketplace." Croyle Aff. ¶¶ 5-6, Nov. 13, 2009. Stanly County, the Department of Environmental and

Natural Resources, and the State of North Carolina intervened and opposed the request for rehearing.

The Commission denied rehearing, concluding that Section 401's one-year period for a State to "act" does not foreclose a certification that requires action beyond the one-year period as long as the certification itself issues before the one-year anniversary of the request. *Rehearing Order* ¶ 14. The "controlling point," the Commission explained, was that "no additional decision will be required from the [State] Division on the certification request itself." *Id.* With regard to the clause stating that the certification was not "effective" until satisfaction of the bond condition, the Commission ruled that this would not delay its licensing proceeding because Section 401 permits it to proceed once the certification "has been obtained," 33 U.S.C. § 1341(a)(1), regardless of whether it has become "effective." *Rehearing Order* ¶ 15. The Commission concluded that it "would be free to issue a license, regardless of whether the certification provided that it was not yet effective," and accordingly, there was no waiver issue. *Id.* The Commission interpreted its regulations to mean that a Section 401 waiver occurs where a State "has not denied or granted certification" by the one-year date. 18 C.F.R. § 4.34(b)(5)(iii). Pursuant to its policy, the Commission stayed the licensing proceeding pending resolution of the State administrative appeal. *See Rehearing Order* ¶ 15. This petition for review followed.

## II.

The Commission maintains the petition is not ripe for review because the ongoing administrative proceeding in North Carolina could significantly change the analysis or moot the petition altogether, and Alcoa Power would suffer little hardship if a decision on the waiver issue were delayed until the culmination of the State proceeding. We disagree.

In making the ripeness determination, the court considers two factors: "'[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration.'" *Devia v. NRC*, 492 F.3d 421, 424 (D.C. Cir. 2007) (quoting *Nat'l Treasury Emps.' Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996)) (modification in original). On the first factor, "fitness," the court considers whether the issue presented is "'purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final.'" *La. Pub. Serv. Comm'n v. FERC*, 522 F.3d 378, 397 (D.C. Cir. 2008) (quoting *Atl. States Legal Found., Inc. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003)) (internal quotation marks omitted). The "basic rationale" of this requirement "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967). But there is also a "usually unspoken" underlying rationale relating to the doctrine of mootness: a claim may be unripe where "'[i]f we do not decide [the claim] now, we may never need to.' *Devia*, 492 F.3d at 424 (quoting *Nat'l Treasury Emps.' Union*, 101 F.3d at 1431) (modification in original). Accordingly, the fitness analysis requires the court to consider both whether the context in which the issue is presented is sufficiently concrete and conducive to judicial determination, and whether deciding the issue now would violate principles of judicial restraint and efficiency that counsel against "spending [our] scarce resources on what amounts to shadow boxing." *Id.* at 424-25 (quoting *McInnis-Misenor v. Maine Med. Center*, 319 F.3d 63, 72 (1st Cir. 2003)).

The Commission acknowledges that the challenged orders "represent a dispositive agency decision" on the waiver issue. Resp't's Br. 15. Nonetheless it maintains that because Alcoa Power's ultimate goal in the relicensing proceeding is issuance of a new fifty-year license for the Yadkin Project, this matter is unripe until the Commission rules on the licensing request. Further maintaining that the relief Alcoa Power seeks is acceleration of the Commission's licensing decision, and not a license itself, the Commission suggests that the petition could be mooted at any time by the North Carolina administrative law judge upon lifting the stay of certification. Alternatively, the Commission maintains that the administrative law judge could modify the bond condition and thereby change the analysis this court must undertake.

Alcoa Power responds, citing *Louisiana Public Service Commission v. FERC*, 522 F.3d at 398, that a mere possibility that the Commission could revisit its dispositive ruling later in the licensing proceeding is insufficient to find the waiver issue presented in the petition for review unripe. In *Louisiana Public Service Commission*, the court explained that orders "clearly contingent on subsequent proceedings or events" are unripe for review, but where the Commission had "conclusively resolved the refund and timing issues,"a petition seeking review of those issues was ripe. 522 F.3d at 398. Further, Alcoa Power points out that the waiver issue presents a purely legal question regarding the meaning of Section 401's one-year limit for State certification and that nothing in the State proceeding could moot the claim or change the analysis. It correctly distinguishes the cases relied on by the Commission as involving circumstances not present here: (i) issues the federal agency had not conclusively decided, as in *Toca Producers v. FERC*, 411 F.3d 262, 266 (D.C. Cir. 2005); (ii) issues that if "not adjudicated at this time may . . . not require adjudication at all,"*Friends of Keeseville v. FERC*, 859 F.2d 230, 235 (D.C. Cir. 1988); and

(iii) issues that would require a detailed and fact-intensive analysis that could ultimately be mooted by subsequent agency action, as in *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 734-45 (1998).

The nature of the review required by the petition for review, and the strong likelihood that this court will have to decide the waiver issue later if not now, weigh in favor of concluding the petition is fit for judicial review. The waiver issue presents a purely legal question: does a state waive its Section 401 certification authority when it issues a certification within the one-year period stating that it is not effective until the applicant satisfies a condition that can be satisfied, if at all, only outside of the one-year period? Addressing this question will not require the sort of "time-consuming judicial consideration of the details of an elaborate, technically based plan" that led the Supreme Court to decline to hear a pre-implementation challenge to logging regulations in *Ohio Forestry Association*, 523 U.S. at 735-36. Further, the Commission has no plans to revisit the waiver issue, and thus it cannot be argued that "[t]he Commission has yet to pass conclusively upon whether [Alcoa Power is] entitled to the only relief [it] now seek[s]," *Toca Producers*, 411 F.3d at 266, namely a lifting of the stay of the licensing proceeding. Because the Commission has ruled dispositively on the waiver issue, the court would not be short-circuiting any agency proceeding by addressing the waiver issue now.

The petition for review was filed in a context that distinguishes it from *Friends of Keeseville v. FERC*, on which the Commission relies in maintaining that the availability of judicial review at a later stage favors finding this petition for review unripe. In *Keeseville*, a nonprofit development corporation sought review of the Commission's order ruling that the petitioner's application for a hydroelectric plant

development permit was untimely, and that the permit should be granted to a for-profit competitor. 859 F.2d at 232. Before this court resolved the matter, the Commission cancelled the competitor's permit when it failed to file a required report. *Id.* As a result, the petition was moot insofar as it sought revocation of the permit. *Id.* As for the untimeliness of the petitioner's application, the court held the issue unfit for judicial review because "if the issue is not adjudicated at this time, it may not require adjudication at all." *Id.* at 235. The court reasoned that it was "possible" petitioner had "lost interest in developing" the site, noting that petitioner had not filed a new application since the cancellation of the competitor's permit. *Id.* at 235 & n.13. But even if petitioner remained interested in developing the site, the court noted that it could file a new application, the grant of which would moot the timeliness issue. *See id.* at 235. Whether it adjudicated the matter and deemed the application timely or petitioner filed a new application, the Commission would in either event proceed to evaluate the merits of the application on essentially the same timeline, and thus the petitioner's only real interest in having the matter decided was the "inconvenience of filing a new application," *id.* at 236 n.15. The "relatively slight" interest in withholding judgment was therefore greater than the petitioner's "insignificant" interest in having the issue decided. *Id.* at 236.

Here, the probability that the court will not confront the waiver issue at a later date (were we to conclude the case is unripe) is very low. The waiver issue would not be moot unless Alcoa Power prevailed in the North Carolina proceeding and the State decided to waive its certification rights rather than revise the certificate to accommodate this hypothetical ruling or the Commission ultimately declined to issue a license for reasons unrelated to the certificate. Neither of these scenarios seems likely. Of course, Alcoa Power might as a practical matter abandon its waiver argument if the State administrative law

judge removed the bond condition. But that seems improbable and its possibility does not undermine the legal proposition that the waiver issue will not become moot as soon as the North Carolina proceeding is complete, and therefore the waiver argument would almost certainly be made again sooner or later to this court.

Furthermore, even if Alcoa Power eventually prevails in the State proceeding and the bond condition is modified or eliminated, it may be years before the stay of certification is lifted and the Commission proceeds with licensing. The remoteness of the possibility of a swift end to the state proceeding is underscored by North Carolina's recent revocation of the 2009 Certification.[1] Neither the Commission nor the State and County intervenors provide any reason to conclude that the State administrative stay of the 2009 Certification will be lifted anytime soon. Any institutional interest in deferring adjudication is thus remote and theoretical.

For these reasons we conclude that any judicial interest in deferring adjudication is slight and that the waiver issue is otherwise fit for judicial review.

---

[1] On January 10, 2011, days before oral argument in this court, the parties advised the court that on December 1, 2010, the Division of Water Quality, citing "intentionally withheld information" material to the State's water quality assessment, issued a Notice of Revocation of the 2009 Certification. Letter to William Bunker, Alcoa Power, from Colleen H. Sullins, N.C. Dep't of Envtl. & Natural Res. (Dec. 1, 2010). The Notice of Revocation was filed with the Commission, and in response Alcoa Power advised the Commission that it intended to "contest its issuance." Letter to Sec'y, FERC, from David R. Poe, Counsel to Alcoa Power (Dec. 7, 2010).

On the hardship factor, the Commission points out that Alcoa Power continues to operate the Yadkin Project pursuant to annual licenses that renew the terms of the original 1958 license for one year at a time, and thus faces no hardship because its "continued operation of the Project is not called into question" by this arrangement. Resp't's Br. 18. Alcoa Power observes that this court has held that "where there are no institutional interests favoring postponement of review, a petitioner need not satisfy the hardship prong," *AT&T Corp. v. FCC*, 349 F.3d 692, 700 (D.C. Cir. 2003), and hence the court "need not review" the hardship factor. Pet'r's Reply Br. 8. But the court has recognized both approaches are followed "and "we typically weigh the institutional interests in postponing review against the hardship delay would cause." *TRT Telecommunications Corp. v. FCC*, 876 F.2d 134, 141 (D.C. Cir. 1989).

Alcoa Power maintains that deferring adjudication of the waiver issue would impose an undue burden by requiring a "lengthy and costly state proceeding" that, if it is correct on the merits, is entirely moot, *id.* at 9, and that delay in obtaining a fifty-year renewal denies it the certainty and security required to make long-term capital investments in the Yadkin Project. Although "the burden of participating in further administrative and judicial proceedings does not constitute sufficient hardship" in a ripeness challenge, *AT&T Corp.*, 349 F.3d at 702, and business uncertainty resulting from agency action or inaction may sometimes not be a legally cognizable hardship, *see Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 811 (2003), this court acknowledged an exception to the proposition in *Exxon Mobil Corp. v. FERC*, 501 F.3d 204, 208 (D.C. Cir. 2007). There the court credited the fact that "delaying resolution . . . [would] tend to inhibit or delay investment" in large part because "Congress ha[d] made unmistakably clear its intention to speed construction of" the Alaska Pipeline and "[i]n

the unusual circumstances of th[at] case" delay would have been "a cognizable hardship to the Nation as a whole." *Id*. Although Alcoa Power does not suggest delay in the relicensing of the Yadkin Project would cause "cognizable harm to the Nation as a whole," the statute sets the hydroelectric project license term at not less than 30 nor more than 50 years, *see* Federal Power Act § 15, as amended by Electric Consumers Protection Act of 1986, § 5, 16 U.S.C. § 808(e), revealing congressional recognition that significant capital investments cannot be made in hydro power projects without the certainty and security of a multi-decade license. According some weight to the hardship that Alcoa Power faces from relicensing delay is, therefore, justified.

Because the waiver issue is fit for review and the legally cognizable hardship that Alcoa Power will suffer from delay, although not overwhelming, suffices to outweigh the slight judicial interest in the unlikely possibility that we may never need to decide the waiver issue, we hold the petition is ripe for review.

## III.

Alcoa Power contends that the Commission misinterpreted Section 401(a)(1) in ruling that North Carolina did not waive its certification authority because it did not "fail[] or refuse[] to act," 33 U.S.C. § 1341(a)(1), within the one-year statutory period. To the contrary, Alcoa Power maintains, a State only "act[s]" within the meaning of Section 401(a)(1) when it "issues a [certification] that is complete and capable of becoming effective within the one-year period or denies certification within that time." Pet'r's Br. 28. The Commission's view that the 2009 Certification is a qualifying "act" under Section 401 even though by its terms the certification is not "effective" until Alcoa Power secures a $240 million bond, in Alcoa Power's

view, "would allow a state to indefinitely block or delay federal action" and thus thwart Congress's intent in imposing a one-year time limit on a State's certification authority. *Id.* Essentially, Alcoa Power maintains that it would render Section 401(a)(1)'s time limit nugatory if a State could issue the certification on time but with conditions that would prevent the Commission from proceeding with licensing until some point in the future beyond the one-year date.

**A.**

We begin with a note on our jurisdiction. In enacting the Clean Water Act, Congress sought to expand federal oversight of projects affecting water quality while also reinforcing the role of States as "the 'prime bulwark in the effort to abate water pollution,'" *Keating v. FERC*, 927 F.2d 616, 622 (D.C. Cir. 1991) (quoting *United States v. Puerto Rico*, 721 F.2d 832, 838 (1st Cir. 1983)). The certification authority granted States is "[o]ne of the primary mechanisms" through which they may exercise this role, as it provides them with "the power to block, for environmental reasons, local water projects that might otherwise win federal approval." *Id.* If a State denies a water quality certification request, Section 401(a)(1) provides that no federal "license or permit shall be granted." 33 U.S.C. § 1341(a)(1). If a State issues a certification contingent on the applicant's satisfaction of various conditions, Section 401(d) requires the agency upon issuing the license to incorporate those conditions in the final license. *Id.* § 1341(d). These conditions may be based on requirements for monitoring or performance standards under the Clean Water Act, or "any other appropriate requirement of State law." *Id.*

In *S.D. Warren Co. v. Maine Board of Environmental Protection*, 547 U.S. 370, 386 (2006), the Supreme Court construed States' Section 401 certification authority broadly to admit few restrictions on a State's authority to reject or

condition certification. For this reason, a State's decision on a request for Section 401 certification is generally reviewable only in State court, because the breadth of State authority under Section 401 results in most challenges to a certification decision implicating only questions of State law. *See City of Tacoma, Wash. v. FERC*, 460 F.3d 53, 67 (D.C. Cir. 2006). A water quality certification is reviewable in federal court, however, at least to the extent Section 401 itself imposes requirements that a State must satisfy in order for a certification to be a "certification required by this section," 33 U.S.C. § 1341(a)(1). At issue in *City of Tacoma* was whether the State of Washington had "establish[ed] procedures for public notice" as required by Section 401(a)(1). This court vacated the license and remanded the matter to the Commission to determine whether the State had established and followed proper public notice procedures. 460 F.3d at 67.

As in *City of Tacoma*, the question Alcoa Power presents in its petition for review is whether a State-issued water quality certification complies with the requirements of Section 401. Specifically, the question is whether the 2009 Certification is valid under Section 401 as the State's "act on a request for certification" within the statutory one-year period. 33 U.S.C. § 1341(a)(1). If it is not, then the 2009 Certification is invalid under federal law, the State has waived its certification rights, and the Commission may proceed immediately with licensing. If the 2009 Certification is valid, then the ongoing challenge to the certification in the State administrative proceeding is relevant to the ultimate disposition of Alcoa Power's license application; Alcoa Power does not challenge the Commission's policy of staying licensing proceedings pending a challenge in State proceedings to an otherwise-valid water quality certification. Because the validity of the 2009 Certification under Section 401 is a question of federal law, the issue was

properly put to the Commission, and is now properly before this court.

**B.**

Turning to the merits of Alcoa Power's petition, the Commission concedes that its interpretation of Section 401 is entitled to no deference by the court because the Environmental Protection Agency, and not the Commission, is charged with administering the Clean Water Act. *Ala. Rivers Alliance v. FERC*, 325 F.3d 290, 296-97 (D.C. Cir. 2003). Our review of the Commission's interpretation of Section 401 is *de novo*. *Id.* at 297. With regard to Alcoa Power's contention that the Commission misinterpreted or misapplied its own regulations, however, the Commission's interpretation is entitled to substantial deference and subject to reversal only if it "is plainly erroneous or inconsistent with the regulation." *Bluestone Energy Design v. FERC*, 74 F.3d 1288, 1292 (D.C. Cir. 1996) (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)). The Commission's factual findings are reviewed under the deferential arbitrary and capricious standard. *See Lichoulas v. FERC*, 606 F.3d 769, 775 (D.C. Cir. 2010).

Section 401(a)(1) requires that a State "act on a request for certification[] within a reasonable period of time (which shall not exceed one year) after receipt of such request," or else "the certification requirements of this subsection shall be waived with respect to such Federal application." 33 U.S.C. § 1341(a)(1). In imposing a one-year time limit on States to "act," Congress plainly intended to limit the amount of time that a State could delay a federal licensing proceeding without making a decision on the certification request. This is clear from the plain text. Moreover, the Conference Report on Section 401 states that the time limitation was meant to ensure that "sheer inactivity by the State . . . will not frustrate the Federal application." H.R. Rep. 91-940, at 56 (1970), *reprinted*

*in* 1970 U.S.C.C.A.N. 2741. Such frustration would occur if the State's inaction, or incomplete action, were to cause the federal agency to delay its licensing proceeding.

Alcoa Power thus correctly maintains that the purpose of the waiver provision is to prevent a State from indefinitely delaying a federal licensing proceeding by failing to issue a timely water quality certification under Section 401. From this conclusion it follows that the inverse must also be true: if a certification would allow the Commission to proceed with licensing, then waiver did not occur. Crucial, then, to Alcoa Power's petition is whether the 2009 Certification will allow the Commission to proceed with licensing without first requiring satisfaction of a condition contained in the certification. Alcoa Power points to the clause in the bond condition that the certification is "only effective" upon its satisfaction as impermissibly operating to delay Commission proceedings beyond the statutory one-year period. The provision operates, Alcoa Power maintains, as a condition precedent to licensing, and because it was impossible for Alcoa Power to satisfy the condition within the one-year period set by Section 401 — the certification having been issued on the final day of that period — if, indeed, it could *ever* be satisfied, the certification would "delay and block" the federal licensing beyond the one-year period and thereby run afoul of the waiver provision. Pet'r's Reply Br. 16.

Alcoa Power's interpretation assumes, however, that the "effective" clause means that the bond condition does, in fact, operate as a condition precedent to licensing. North Carolina, whose agency issued the water quality certification, claims that the 2009 Certification had no legal effect until its terms were incorporated into the federal license, and so "[t]here would have been no reason or authority for [the Division of Water Quality] to include a condition that required [Alcoa Power] to do

anything before the license was issued." Respondent-Intervenor North Carolina Br. 20. The State continues, the only way to interpret the certification "sensibly is that the bond condition is simply a condition of the Certification that becomes enforceable when the Commission issues the license." *Id.* at 21. North Carolina explains that the purpose of the "effective" clause is to require Alcoa Power to post the bond before it undertakes to satisfy the various other conditions of the certificate, thereby ensuring that it does not "commence any programs that it cannot complete." *Id.* It notes that Alcoa Power filed the certification with the Commission the day after issuance without any mention of the effectiveness clause or indication that the Commission would have to wait for it to satisfy a condition precedent prior to licensing.

The Commission rejected Alcoa Power's interpretation, ruling that Section 401 allowed it to proceed with licensing irrespective of the "effective" clause in the bond condition to the 2009 Certification. The Commission reasoned that the Clean Water Act requires it only to wait for "the certification required by this section [to be] *obtained*," Section 401(a)(1) (emphasis added), not for the certification to be *effective*, and "the Commission would be free to issue a license, regardless of whether the certification provided that it was not yet effective." *Rehearing Order* ¶ 15. If Alcoa Power did not post the bond, then it "might be a failure to meet a condition of the certification" that could warrant a license suspension or revocation proceeding, "but it would not require a delay in Commission action" to issue the license in the first place. *Id.*[2]

---

[2] In its brief, the Commission suggested that it did not reach the question of whether it could issue a license prior to Alcoa Power's satisfaction of the bond condition, relying on a footnote in the Rehearing Order stating that the question was "premature." *Rehearing Order* ¶ 15 n.6. This overreads the footnote, because the Commission

As a result, there is no waiver issue because the "effective" clause would not operate to delay or block the federal licensing proceeding beyond Section 401's one-year period. The Commission also rejected Alcoa Power's contention that the bond condition "delayed the legal effectiveness" of the 2009 Certification, Pet'r's Br. 42, in violation of 18 C.F.R. § 4.34(b)(5)(iii), which deems a State's certification authority waived if the certification is "not denied or granted" within the one-year period. The Commission read the regulation consistently with its interpretation of Section 401 that the grant of certification — even with conditions — qualifies under the regulation, and thus there was no waiver.

The Commission's interpretation of Section 401(a)(1) to allow licensing once a certification has been "obtained," 33 U.S.C. § 1341(a)(1), even if the certification is not by its terms immediately "effective," is consistent with the plain text and statutory purpose of the provision. It also conforms to the State's understanding of when the condition in its certification is enforceable. Nowhere in Section 401 is it stated that a certification must be fully effective prior to the one-year period much less prior to licensing; it requires only that a State "act" within one year of an application and that a certification be "obtained." 33 U.S.C. § 1341(a)(1). The largely unqualified terms of Section 401 are broader than Alcoa Power suggests and unrelated to the effectiveness of a certification prior to licensing. To accept Alcoa Power's interpretation would require adding terms to the statute that Congress has not included. *See Nat'l Ass'n of Mfrs. v. Dep't of Labor*, 159 F.3d 597, 600 (D.C. Cir.

---

quite clearly did rule on rehearing that the "effective" provision in the bond condition of the 2009 Certification "does not change the fact that the State has acted and certification has been issued," and thus "the Commission would be free to issue a license" upon conclusion of the State administrative appeal. *Id.* ¶ 14.

1998). It is, moreover, unclear what meaning the "effective" clause could possibly have prior to licensing; Alcoa Power appears to agree that the certification itself is not enforceable (whether or not the disputed clause is present) until its terms are incorporated by the Commission in an issued license. Instead, Alcoa Power suggests that by inserting the clause the Division of Water Quality meant to restrain the Commission from issuing a license until Alcoa Power satisfied the bond condition. North Carolina denies that its agency had any such intention, and if it had, it would have said so more clearly. More likely, just as North Carolina and the Commission interpret it, the "effective" clause requires Alcoa Power to satisfy the bond condition within 90 days of license issuance and before it undertakes to satisfy the remediation and monitoring conditions of the certification. A failure to do so could constitute a condition violation that subjects it to suspension or revocation proceedings. *See Rehearing Order* ¶ 15. The clause alone, however, does not purport to restrain the Commission from exercising its federal authority to proceed with licensing.

It follows that the Commission reasonably interpreted its regulation consistently with its interpretation of Section 401(a)(1). Because the Commission correctly ruled that it was free under Section 401 to proceed with licensing notwithstanding the bond condition, the request for certification was, for all relevant federal purposes, "granted" before the statutory and regulatory one-year deadline expired and thus there was no waiver under the regulation just as there was none under the statute.

In sum, under Section 401, the State, acting through its Division of Water Quality, timely issued a water quality certification that complied with the requirements of Section 401. The Commission on rehearing made clear that it was free to commence its licensing proceeding but for its policy to stay such

proceedings pending conclusion of the State proceeding, which policy Alcoa Power does not challenge. Because the "effective" clause in the bond condition of the 2009 Certification did not operate to block or delay the federal licensing proceeding, and it did not contravene Section 401(a)(1)'s waiver provision, much less the Commission's regulations, Alcoa Power's objections to the substantive content of the 2009 Certification is a matter of State law that is properly raised in the State proceeding, as Alcoa Power has done.

Alcoa Power's additional objection that the Commission failed to engage in reasoned decision-making by ignoring or misapprehending certain material facts fails. The allegedly ignored facts are that (i) the bond condition as written in the 2009 Certification is objectively impossible to satisfy, and (ii) the Division of Water Quality had ample time to request satisfaction of the bond condition within the one-year statutory period in view of the extended procedural history of Alcoa Power's requests for certification. These assertions became irrelevant to the Commission's waiver analysis once it concluded that neither Section 401 nor its own regulation required it to wait until the bond condition was satisfied before proceeding with Alcoa Power's license application. The Commission therefore had no reason to analyze these issues in greater depth.

Accordingly, we deny the petition for review.