## In re Tariff Filing of New England Telephone & Telegraph Co.

[488 A.2d 746]

No. 84-517

Present: Allen, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed December 28, 1984

Motion for Reargument Denied February 6, 1985

310

*Christopher M. Bennett,* Boston, Massachusetts, for Plaintiff-Appellee.

*Gerald R. Tarrant,* Montpelier, for Defendant-Appellant.

**Gibson, J.** The Department of Public Service (Department) has filed a motion for stay of a Public Service Board (Board)

order, issued September 21, 1984, granting a $3,253,000 rate increase to New England Telephone and Telegraph Company (NET). The increase, "based entirely upon changes in depreciation rates and policies," was not to go into effect, however, until NET had received authorization from the staff of the Federal Communications Commission (FCC) to begin booking its newly proposed depreciation rates. On October 12, 1984, the staff of the FCC gave NET permission to begin booking its proposed depreciation rates "on an interim basis" pending a ruling by the FCC, expected sometime in January 1985. Although the rate increase was characterized by the Board as a "temporary increase," full hearings were held, and the parties agree that the order was a final order on the merits.

While this case was pending, a general rate case, not limited to the issue of depreciation, was being heard by the Board. On October 5, 1984, the Board issued its order granting NET a $7,500,000 rate increase therein. The $7,500,000 increase was put into effect, together with the $3,253,000 increase, on October 14, 1984. The Department's request for a stay of the $3,253,000 increase was denied by the Board on October 29, 1984.

This Court's authority to stay an order of the PSB derives from 30 V.S.A. § 14, which authorizes the Court to suspend the execution of an order "as justice and equity require." In considering whether to take action under this authority, the Court has, in the past, looked at certain guidelines, characterized as "helpful generalizations," as follows: (1) the likelihood of success of the appealing party on the merits, (2) whether the party seeking the stay will suffer irreparable injury if the stay is not granted, (?) whether the issuance of a stay will substantially harm other parties, and (4) the location of the best interests of the public. *In re Allied Power & Light Co.*, 132 Vt. 554, 556, 326 A.2d 160, 162 (1974).

The Department contends that it is likely to succeed on the merits of the appeal because (1) the Board's order, by focusing entirely upon changes in depreciation rates and policies, constitutes selective updating, a forbidden rate-making procedure, *In re Central Vermont Public Service Corp.*, 144 Vt. 46, 59, 473 A.2d 1155, 1162 (1984); (2) the order constitutes retroactive ratemaking by forcing present and future customers to

pay for the past under-accruals, see *id.* at 56–57, 473 A.2d at 1160–61; and (3) the rate increase was not based on a known and measurable change but rather on a contingency, consisting, first, of approval of the depreciation rates by the FCC staff, and secondly, of final approval by the FCC. See *In re Village of Stowe Electric Department*, 134 Vt. 559, 565, 367 A.2d 1056, 1060 (1976).

■ As has been stated by former Chief Justice Barney, "[t]he function of the Supreme Court, or a Justice of it, in passing upon a motion for a stay, is not to second-guess the Board, but to act in opposition only when the action of the Board cannot be supported . . . ." *Allied Power, supra,* 132 Vt. at 555, 326 A.2d at 161. When considering the likelihood of success on the merits, the Court must be careful not to allow the argument on the interlocutory issue to be expanded into a full-blown debate on all issues likely to be raised on appeal and, as a general rule, should limit itself to granting a stay on this ground "only when the basis for the ruling in favor or against the stay below is so tenuous that its invalidity is suggested on the face of the matter, or the order smacks of bad faith or frivolousness." *Id.* at 556, 326 A.2d at 162.

■ The proceeding below concerned itself solely with the depreciation rates and policies of NET, with the full impact of the authorized changes being passed on to the ratepayers. It is the duty of the Board to set rates that are just and reasonable, *In re Central Vermont Public Service Corp.,* 143 Vt. 120, 121–22, 463 A.2d 525, 525–26 (1983); 30 V.S.A. §§ 218, 225–227 (Supp. 1984); however, nowhere in its findings or in its discussion of the issues does the Board make any determination as to whether the rate increase authorized herein is just and reasonable. In support of the Board's action, NET points to the general rate case that was under consideration concurrently with the instant proceeding, and argues that the general rate case gave the Board and the parties a full opportunity to address all of the rate-making factors which might be affected by any depreciation changes. However, that case is also on appeal before this Court, and whatever the ultimate outcome therein, there has been no determination that the rates in the instant proceeding are just and reasonable.

■■ This Court on two recent occasions has held that establishing utility rates by selectively updating one cost factor alone without assessing other cost or revenue factors is an improper or forbidden procedure. *In re Central Vermont Public Service Corp., supra,* 144 Vt. at 59, 473 A.2d at 1162; *In re Green Mountain Power Corp.,* 142 Vt. 373, 384, 455 A.2d 823, 827 (1983). In the present case, a similar approach has been taken; NET has been allowed to make an adjustment in its rates to the public based solely on a change in its depreciation rates and policies without an analysis of other important rate-making factors, such as rate of return, rate base, and operating revenues and expenses. When a rate change is authorized, as here, it will not suffice to say that such factors were being dealt with in a separate proceeding. Each rate case must stand or fall on its own merits. The other proceeding, having been appealed, is not yet finally determined; a reversal of that case would not affect the instant proceeding, and the rates authorized herein would thus remain in effect without the sanction of a determination by the Board that they were just and reasonable.

■ We have no quarrel with the agreement of the parties, in light of the complicated nature of the subject matter, to deal with the problems of depreciation in a proceeding independent from the general rate case. However, before any changes in depreciation rates and policies may be translated into changes in the rates charged to the public, the Board must follow the procedures established by law. Because it does not appear on the face of the proceedings that it has done so, there is a reasonable likelihood that the Department will prevail on its appeal.

In light of this determination, we do not consider the Department's arguments that the rate increase constituted retroactive ratemaking or was improperly based upon a contingency. We note for the record that, subsequent to oral argument, the FCC on December 19, 1984, prescribed for use by NET the depreciation rates approved by its staff, effective as of October 1, 1984. Although this action moots the argument that the Board's action was based on a contingency, it does not correct the underlying defect outlined above.

■ With respect to the Department's contention that the

ratepayers will suffer irreparable injury if the stay is not granted, we are satisfied from the Board's orders of September 21 and October 29, 1984, that appropriate measures to accomplish the refunding of excess revenues would be taken if such became necessary. Because of the mobility of today's society, the refunding mechanism might not insure that each person who contributed to any excess revenues would be reimbursed; nevertheless, the Board could insure that NET, through payments or credits to its customers, repaid all excess revenues it had collected. We do not believe there is a danger of irreparable injury to the public if a stay were not to be granted.

■■ With respect to whether NET will be substantially harmed by the issuance of a stay, we note that the October 12, 1984, letter from the staff of the FCC merely gave NET permission to implement the proposed depreciation rates on an interim basis effective January 1, 1985, or concurrently with revenues authorized by the Board, whichever came first. The letter not only did not require NET to put the new rates into effect, but it also put NET on notice that if it did do so, NET could be required to (1) "adjust its entries" if the FCC itself were to prescribe rates or effective dates different from the interim rates or effective dates authorized by the staff, or (2) "adjust its entries" to reflect depreciation rates in effect immediately prior to the interim rates if the FCC should fail to prescribe rates prior to the end of January 1985. Despite the cautionary words of the FCC staff, NET elected to put the new depreciation rates into effect before receiving a final ruling from the FCC. NET argues that if a stay is granted the increased depreciation expenses it is presently incurring pursuant to the FCC staff authorization will be paid by the shareholders rather than the ratepayers. It does not argue that the harm would be substantial, and we are unable to find that NET would be substantially harmed by a stay. In any event, NET voluntarily and knowingly exposed itself to the economic risk that the depreciation rates might not be approved or that the rate increase might be stayed. Such risks are "part of the utility business, and . . . may properly be assigned to the owners of a utility company rather than to its consumers." *In re Central Vermont Public Service Corp., supra,* 144 Vt. at 58, 473 A.2d at 1161.

With respect to the location of the public interest, we have in mind the words of the Board in its order of October 29, 1984, wherein it concluded that a stay could harm the ratepayers on the theory that "they will have to bear a greater proportion of these costs in the future if implementation of these rates is delayed now." Nevertheless, we believe that, because of the likelihood the Department will prevail on appeal, a stay will minimize any future adjustments that would have to be made and will best serve the interests of both the public and NET.

█ The Department's motion for a stay of the Board's order of September 21, 1984, will be granted pending final determination of these proceedings. We do not by this order stay the implementation of the depreciation rates; the order is intended to stay only that portion of the Board's order that authorizes NET to change its rates to its ratepayers.

*The motion for a stay is granted.*