STATE OF VERMONT

| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| --- | --- |
| | Docket No. 39-4-17 Vtec |

| | |
| --- | --- |
| Devonwood Investors, LLC 75 Cherry Street | Docket No. 39-4-17 Vtec |

### Decision on Motion to Stay

This is an appeal from a March 17, 2017 decision by the City of Burlington Development Review Board to issue a permit to Devonwood Investors, LLC, for the construction of a mixed-use project in Burlington. The matter is now before the Court on Appellants' motion to stay. For the reasons set out below, the motion to stay is **DENIED**.

### Background and Procedural History[1]

On December 15, 2016, Devonwood Investors, LLC, and PKSB Architects & PC Construction filed an application with the Burlington Development Review Board (DRB) requesting a permit for the mixed-use redevelopment of the existing Burlington Town Center Mall site. The proposed Project would replace the existing mall with a mixed-use, mixed-income housing project with 272 residential housing units, offices, retail, community space, and a parking garage (the Project). The DRB approved the application on March 17, 2017. A group of people (Appellants)[2] appealed that decision to the Environmental Division on April 14, 2017.

The matter is now before the Court on Appellants' motion to stay the DRB approval, and any demolition or construction work on the Project. The motion for stay was filed on May 2,

---

[1] This section is included for context only.

[2] Appellants are Barbara McGrew, Hannah Babiss, Sandra Baird, Lionel Beasley, Jeremy W. Bond, Talia Bosley, Sara Brown, Montana Burns, Jared Carter, Amanda Coggeshall, Steve Coggeshall, Jack Daggitt, Kimberly Dean, Jasmine Dalton, Nancy W. Dinkel, Gregory H. Dinkel, Glenn Eames, Alex Epstein, Thomas Fitzgerald, Monique Ford, John L. Franco, Douglas French, Meriam French, Diane Gayer, Steven Goodkind, Alora Goodkind, Hogo Martinez Gazon, Gabrielle R. Hall, John Hanson, Stephen Hard, Colleen Hendeny, Nancy L. Kirby, Alex Laven, Larry Lewack, Geoffrey H. Leyden, Caryn Long, Michael Long, Jerome E. Mabb, Patrick Maurier, Lynn Martin, Sage Narbonne, Dan Nielsen, Barbara Nolfi, Shan Norten, Elizabeth Perry, Theresa Pilch, Anthony Reddington, Laurie E. Roberge, Gabriela Salazar, Andrew Simon, Charles R. Simpson, Jess Slayton, Ibnar A. Stratibus, Mary Twitchell, and Donna Walters.

2017; Devonwood Investors, LLC (Devonwood) and BTC Mall Associates, LLC[3] (BTC) filed an opposition to the motion for stay on May 15, 2017. In the opposition, Devonwood and BTC ask the Court to require Appellants to post a bond if the Court grants the motion to stay. Appellants filed a reply on May 16, 2017, also asking the Court to require Devonwood to post a bond if the Court denies the motion to stay. Devonwood and BTC filed a sur-reply opposing the stay and request for bond on May 18, 2017. The City of Burlington (the City) filed a response to the motion for stay on May 19, 2017.

On May 15, 2017, BTC also filed a motion for an expedited hearing on the motion for stay. Appellants filed an opposition to a hearing on May 16, 2017.

Appellants are represented by John L. Franco, Esq.; Devonwood and BTC are represented by Brian S. Dunkiel, Esq. and Jonathan T. Rose, Esq.; and the City is represented by Kimberlee J. Sturtevant, Esq.

**Discussion**

I.     **Motion for Stay**

A decision by an appropriate municipal panel—such as the DRB, in this case—to issue a permit is not automatically stayed when that decision is appealed to this Court. See 10 V.S.A. § 8504(f); V.R.E.C.P. 5(e). A party may nonetheless request the Court to stay the permit, as Appellants have done here. Id.[4]

We consider four factors to determine whether the stay request should be granted: "(1) [the moving party's] likelihood of success on the merits; (2) irreparable harm to the moving party should the stay be denied; (3) substantial harm to other parties should the stay be granted; and (4) the best interests of the public." 110 East Spring Street CU, No 11-2-16 Vtec, slip op at 5 (Vt. Super. Ct. Envtl. Div. Apr. 22, 2016) (Walsh, J.) (citing In re Tariff Filing of New England Tel. and

---

[3] According to Devonwood and BTC's response to the motion for stay, BTC Mall Associates, LLC "is the owner and developer of the Project property." An affidavit by Donald Sinex attached to the response explains that he is the managing member of Devonwood and Devonwood II Investors, LLC, which together own and control BTC, which in turn owns the Burlington Town Center Mall.

[4] Once such a motion is filed, the underlying permit "shall not take effect until the earlier of 15 days from the date of filing of the notice of appeal or the date of a ruling by the court . . . on whether to issue a stay." V.R.E.C.P. 5(e) (emphasis added). Here, the notice of appeal was filed April 14, 2017, and the permit therefore went into effect on April 29, 2017.

Tel. Co., 145 Vt. 309, 311 (1984)). We consider a stay to be an "extraordinary remedy appropriate only when the movant's right to relief is clear." Howard Center Renovation Permit, No. 12-1-13 Vtec, slip op at 1 (Vt. Super. Ct. Envtl. Div. Apr. 12, 2013) (Walsh, J.).

a. *Whether Appellants' Underlying Appeal is Likely to Succeed on the Merits*

In considering this factor, we are careful not to let the parties' arguments, and our consideration of those arguments, "expand[] into a full-blown debate on all issues likely to be raised on appeal." In re Petition of Vermont Gas Sys., Inc., 2016 VT 132, ¶ 2 (mem.) (quoting Tariff Filing, 145 Vt. at 312 (1985)). We are at a preliminary stage in this proceeding, and on a motion to stay we conduct only a preliminary analysis of the underlying merits. This preliminary analysis is limited to the motion before us, and has no bearing on more in-depth analysis that we may conduct at later stages of this appeal. See In re Allen Road Land Co., Act 250 Permit, Nos. 62-4-11, 63-4-11 Vtec, slip op. at 6 (Vt. Super Ct. Envtl. Div. July 6, 2011) (Durkin, J.).

We have in the past indicated that this factor may be useful as a threshold check to screen out claims that are, at their base, tenuous or frivolous. Howard Center, No. 12-1-13 Vtec at 1 (Apr. 12, 2013) (citing Petition of Allied Power & Light Co., 132 Vt. 554, 556 (1974)). Thus, if an underlying claim is clearly set on a weak foundation, we may rely largely on this first factor to conclude that a stay is not warranted.

In our preliminary analysis of Appellants' challenges to the Project here, we are unable to say that the claims are, as a whole, tenuous or frivolous. Appellants' motion therefore passes this initial threshold. At the same time, we also cannot say at this preliminary stage that any one of Appellants' claims is likely to succeed. BTC and Devonwood, in a separate and additional motion to dismiss, have set out a number of colorable arguments as to why this appeal should be dismissed in part or whole. The City's response to the motion to stay argues in support of the merits of BTC and Devonwood's case. At this point we would give this factor neutral weight in our analysis—Appellants' case is neither frivolous, nor is it certain to prevail.

If the remaining three factors weighed in favor of granting a stay, we would be inclined to conduct a more thorough analysis of the merits at this stage. Those remaining factors, however, which take into account the interests of the parties and the public, weigh against granting a stay. Even if we were to conclude that Appellants' case has a strong likelihood of

success, that would not be sufficient to outweigh the other three factors, which mitigate against granting a stay. See Duct-O-Wire Co. v. U.S. Crane, Inc., 31 F.3d 506, 509 (7th Cir. 1994) (describing a "sliding scale" requiring the moving party to show an increasingly higher likelihood of success on the merits as the other factors increasingly weigh against granting a stay).

b. *Whether Movants Will Suffer Irreparable Harm if the Stay is Denied*

Harm is "irreparable" if it would impair the Court's ability to grant an effective remedy. 11A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2948.1. We conclude that Appellants will not suffer irreparable harm if the stay is denied.

We recently explained that allowing construction to move forward after a permit has been granted, but while that permit is being challenged in this Court, will not lead to irreparable harm. In re Mahar CU Appeal, No. 113-9-15 Vtec, slip op. at 3 (Vt. Super. Ct. Envtl. Div. Dec. 2, 2016) (Durkin, J.). This is because the Court has the authority to impose penalties and order the removal of a structure built without final permit approval. Id. (citing Village of Ludlow v. Kenneth Tofferi and Totem Pole Ski Shop, Inc., No. 213-11-98 Vtec (Vt. Envtl. Ct. Jan. 18, 2002) (Wright, J.); In re Nowicki Building Permit Appeal, 2007 VT 76 at ¶ 1, No. 2006-283, slip op. at 1 (Vt. May 2007) (unpublished mem.).[5]

This same principle is true regarding the deconstruction involved in the Project, including removing an existing parking garage. Removal of a garage will not cause irreparable harm where the proposed project calls for building a new garage.[6]

We note that should BTC decide to move forward with construction while this appeal is pending, it does so at its own risk. Mahar CU Appeal, No. 113-9-15 Vtec at 3–4 (Dec. 2, 2016). If we ultimately determine that the Project as proposed does not comply with the zoning regulations, Devonwood will not be allowed to complete the Project as planned, and will likely

---

[5] In addition, as explained above, the legislature provided in 10 V.S.A. § 8504(f) that a building permit is not automatically stayed on appeal. Instead, the challenger has to convince the Court that a stay is necessary. This indicates a legislative intent to not automatically stop builders from moving forward with construction simply because an approved permit is appealed.

[6] In addition, Appellants' make no assertion that they use the parking garage or that this will impact them personally.

4

be ordered to remove any part of the Project that has been built.[7]  Again, because the Court can order removal and remediation, we conclude that Appellants will not suffer irreparable harm if Devonwood is allowed to proceed with the Project.  In re Moore 3 Lot Subdivision, No. 123-9-13 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Jul. 28, 2014) (Walsh, J.) ("We do note that any action the Moores take in reliance on the DRB approval they take at their own risk.  If Mr. Nagle's appeal is successful, the Moores could be required to remediate the site.").

If we ultimately grant Devonwood's permit application, we may effectively remedy any potential harm by requiring Devonwood to modify or revise the Project.  When complex projects that have received significant local review are challenged on appeal in this court, it is not uncommon for us to approve the project in a revised or modified form, or with conditions attached. See, e.g., Willowell Foundation CU, No. 142-10-12 Vtec, slip op. at 29 (Vt. Super. Ct. Envtl. Div. Jul. 10, 2014) (Walsh, J.).

Alleged harm is also not likely to be irreparable unless it is imminent.  11A Wright, Miller & Kane Civil 3d § 2948.1.  Devonwood has applied for a permit for a large-scale construction project that is unlikely to be completed—and may not even progress very far—before we are able to fully answer the dispute including conducting a trial on the merits.  We therefore see little threat of imminent harm in this case.

Because denying the stay will not irreparably harm Appellants, this factor weighs against granting the stay.

c.  *Whether Parties Will Suffer Substantial Harm if the Stay is Granted*

Devonwood and BTC would suffer substantial financial harm if the stay is granted.  In the transition period from using the mall as it exists today, to completing the proposed Project and using it in that new form, Devonwood and BTC will lose money.[8]  That loss is caused by the inability to rent space in the mall, or use the Project site for any other revenue-generating activity during the transition period, even while maintenance costs continue.  The profitability of the Project site has already diminished as tenants in the mall have ended their leases or are paying

---

[7] This possibility has been accounted for in the permit, which requires Devonwood to post a performance bond with the City to protect against any inability to complete the Project.  See March 17, 2017 DRB decision at 22, Condition 11.  The parties have not briefed the Court on the precise nature of these bonds.

[8] Devonwood estimates losses in the hundreds of thousands of dollars per month.

reduced rent in anticipation of the Project. Granting the stay would extend this period of financial loss during which time the mall will cost more money than it will generate.

If construction is delayed, inflation rates and other economic indicators also suggest that construction costs will increase in the future.

This likely financial harm is sufficient for us to conclude that the third factor weighs against granting the stay.[9] In re Route 103 Quarry, No. 205-10-05 Vtec, slip op. at 5 (Vt. Envtl. Ct. Sep. 14, 2007) (Durkin, J.); In re Champlain College, Inc., No. 145-7-05 Vtec, slip op at 3 (Vt. Envtl. Ct. Apr. 17, 2007) (Wright, J.).

### d. *Whether a Stay is in the Best Interests of the Public*

This Project has proceeded through an extensive local review process involving collaboration with local government and broad public participation.[10]

In 2013, after a multi-year process, the Burlington City Council adopted a municipal plan that called for revitalizing certain downtown areas—including the Project location—and accommodating more high-density, mixed-use development in those areas.

BTC Mall Associates, LLC entered a partnership with the City, with the approval of the City Council, to begin a collaborative process between BTC, the City, and the community, to develop a plan for the Project site. This process involved a series of presentations, public meetings, and comment solicitations in which over 1,500 members of the public were directly involved. The Project design underwent several revisions in response to public input. After this first planning phase, BTC entered a Predevelopment Agreement with the City setting out the general scope of the Project and steps to carry it out. The City then developed a zoning amendment that would allow the Project to be permitted, again through an extensive process and with significant public input. The City held a public vote last fall in which city residents voted in favor of the amendment. Voters also approved a proposal to use Vermont's tax increment financing program to fund public improvements associated with the Project (reconnecting streets and other street improvements).

---

[9] Related to this is the possibility that a delay could cause the loss of an anchor tenant. While the likelihood of this harm appears to be less certain, the impact would be substantial.

[10] In its response, the City also argues that staying the Project is not in the public interest.

Considering the extensive public participation in the planning of this project and the vote supporting zoning and finance measures in furtherance of the project, we conclude that a stay is not in the best interest of the public. This factor therefore weighs against granting a stay.

e. *Conclusion*

Because granting a stay is not in the public interest and would substantially harm Devonwood, because denying the stay would not irreparably harm Appellants, and because Appellants' case is not so overwhelmingly strong on the merits to outweigh these other factors, we conclude that a stay is not warranted in this case. Appellants motion for a stay is **DENIED**.

II.     **Request for a Bond**

Devonwood and BTC have asked the Court to require Appellants to post a bond if the motion for stay is granted. Because we are not granting the motion for stay, this request for a bond is moot.

Appellants, citing Petition of Vermont Gas Sys., 2016 VT 132, argue that if the Court denies the motion for stay and allows the project to go forward, "Devonwood must post a bond sufficient to ensure compliance with a permit denial and an ordered return to the *status quo ante*, and/or with project revisions ultimately ordered as part of an approval." Appellants' Opposition, May 16, 2017 at 6–7.

Petition of Vermont Gas does not support this proposition. In that case, the construction of a pipeline through a public park was automatically stayed when a group of park users filed an appeal with the Public Service Board. Petition of Vermont Gas Sys., 2016 VT 132, ¶ 1. In concluding that a stay was not necessary, the Court stated that the second, third, and fourth factors discussed above weighed against granting a stay, noting in support of this conclusion that the developer had obtained a $1 million bond against any harm the pipeline might cause to the park. Id. ¶ 5. This case is silent on whether a Court that denies a motion to stay a permit can or should require the permittee to post a bond.

Furthermore, the DRB's March 17, 2017 decision already requires Devonwood to post a performance bond with the City to protect against any inability to complete the project. See March 17, 2017 DRB decision at 22, Condition 11.

Finally, it is not our practice to require a permittee to post a bond when the issuance of a permit is appealed.

We conclude that a bond is not necessary in this case; the request for a bond is therefore **DENIED**.

### Order

1. Appellants' motion for stay is **DENIED**.
2. Devonwood and BTC's request for a bond is **MOOT**.
3. Appellants' request for a bond is **DENIED**.

This matter is set for its initial status conference on June 5, 2017. The Court will review each of the remaining motions at that conference.

Electronically signed on May 22, 2017 at 02:32 PM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division