STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION
                                                  Docket No. 103-9-16 Vtec

| Morrisville Hydroelectric Proj Water Quality |
|---|

## ENTRY REGARDING MOTION

Count 1, ANR Decision Other (103-9-16 Vtec)
Count 2, ANR Decision Other (103-9-16 Vtec)
Count 3, ANR Decision Other (103-9-16 Vtec)

Title:          Motion to Stay (Motion 21)
Filer:          Morrisville Water & Light Dept
Attorney:       Elijah D. Emerson
Filed Date:     May 29, 2020

Response filed on 06/12/2020 by Attorney Kane H. Smart for Interested Person Agency of Natural Resources
        Opposition
Response filed on 06/23/2020 by Attorney Ryan M. Long for party 5 Co-counsel
        Reply
Response filed on 06/26/2020 by Attorney Jon Groveman for Cross Appellant Vermont Natural Resources Council
        Opposition
Response filed on 07/15/2020 by Attorney Ryan M. Long for party 5 Co-counsel
        Supplemental MOL in Support

**The motion is DENIED.**

This appeal involves a water quality certification issued by the Agency of Natural Resources (ANR) to Morrisville Water and Light (MWL), pursuant to Clean Water Act (CWA) § 401, for three Morrisville Hydroelectric Facilities located on the Lamoille River and its tributaries (the Project): the Morrisville, Cadys Falls, and Green River Facilities.  MWL appealed ANR's § 401 certification, which imposed additional conditions.[1] See 10 V.S.A. § 8504(a); 33 U.S.C. §1341(a)(1).  The American Whitewater and Vermont Paddlers' Club (AW/VPC) also appealed, objecting to the flow rates instituted at the Green River Reservoir Facility. The Vermont Natural

---

[1] The conditions included flow rate and winter drawdown limitations sufficient to support habitat for fish.

Resources Council (VNRC) and the Vermont Council of Trout Unlimited (TU) also filed cross-appeals. Presently before the Court is MWL's motion to stay the proceeding. ANR opposes, joined by VNRC and TU.

MWL is represented by Ryan M. Long, Esq. ANR is represented by Kane Smart, Esq. VNRC is represented by Jon Groveman, Esq. TU is represented by Robert J. Carpenter, Esq. AW/VPC is represented by Daniel P. Richardson, Esq.

**Procedural History**[2]

This Court held an eight-day trial and issued a Merits Decision that instituted MWL's proposed flow rates, ANR's winter drawdown conditions, and scheduled releases of water as requested by the Paddlers.[3] In re Morrisville Hydroelectric Project Water Quality, No. 103-9-16 Vtec, slip op. at 68–69 (Vt. Super. Ct. Envtl. Div. Sept. 18, 2018) (Walsh, J.). ANR appealed and MWL cross appealed this decision to the Vermont Supreme Court. The Supreme Court affirmed in part and reversed and remanded in part. In re Morrisville Hydroelectric Project Water Quality, 2019 VT 84, ¶ 15 (affirming the winter drawdown and timed releases for AW/VPC at the Green River Facility and reversing the flow-rate conditions for the three facilities, holding that ANR's flow rate conditions be reinstated at Cadys Falls). On remand, Supreme Court directed this Court to consider flow-rate conditions for the Morrisville and Green River facilities. Id. This Court concluded that the remaining question before the Court on remand is limited to what flow conditions are consistent with the Vermont Water Quality Standards (VWQS) and ANR's definition of high-quality habitat at the two facilities. In re Morrisville Hydroelectric Project Water Quality, No. 103-9-16 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Feb. 4, 2020) (Walsh, J.). We then directed parties to brief this particular issue. Id.

Currently before the Court is MWL's motion to stay. The subject of the stay concerns whether this Court should await a decision from the Federal Energy Regulatory Commission (FERC) as to whether ANR waived its authority pursuant to § 401 of the CWA to issue a water

---

[2] This section is included for context only.

[3] The Decision concluded that (1) MWL's proposed flow regimes at the three facilities complied with Vermont Water Quality Standards (VWQS); (2) ANR's condition limiting winter drawdown to 18 inches to provide for high quality water habitat was supported at the Green River Facility; and (3) the whitewater boating at the Green River Facility be annually scheduled for three releases lasting for a duration go six hours. In re Morrisville Hydroelectric Project Water Quality, No. 103-9-16 Vtec at 68–69 (Sept. 18, 2018). Finally, the Decision imposed a total phase-in period of four years for all three facilities to comply with ANR's water quality certification. Id.

quality certification. MWL has petitioned for a declaratory judgment from the FERC, which argues that ANR waived its authority to issue water quality certification for the Project and requests a new license for the Project. ANR contends a FERC ruling does not moot the questions before the Court on remand and delay is highly prejudicial to the Agency and public interest. VNRC and TU mirror ANR's concerns that further delay would result in prejudice.

**Standard of Review**

Rule 5(e) of the Vermont Rules for Environmental Court Proceedings authorizes this Court to issue stays of "the act or decision [appealed from] and make such other orders as are necessary to preserve the rights of the parties upon such terms and conditions as are just." V.R.E.C.P. 5(e). In determining whether the interests justice and equity require a stay, this Court considers: (1) the likelihood of success in appealing on the merits; (2) whether the moving party will suffer irreparable injury if the stay is not granted; (3) whether a stay will substantially harm the other parties; and (4) the best interests of the public. N. Cmty. Inv. Corp. Conditional Use Application, Nos. 123-6-07 Vtec, 128-6-07 Vtec, and 152-7-07 Vtec, slip op. at 2 (Vt. Envtl. Ct. Aug. 30, 2007) (Durkin, J) (quoting In re Tariff Filing of New England Tel. & Tel. Co., 145 Vt. 309, 311 (1984)); see also Brattleboro Mem. Hospital Act 250 Amend. App., No. 96-9-18 Vtec, slip op. at 2 (Apr. 10, 2019) (Durkin, J.) (applying the four factors); Gilbert v. Gilbert, 163 Vt. 549 (1995). In addition, if there is a possibility that a stay will damage another party, the movant "must make out a clear case of hardship or inequity in being required to go forward." In re Woodstock Cmty. Tr. & Hous. Vt. PRD, 2012 VT 87, ¶ 36.

**Discussion**

We begin by reviewing the legal and regulatory framework of § 401 of the CWA. The CWA was enacted to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). In furtherance of this, the CWA includes a § 401 certification process for the purpose of ensuring that licensed or permitted activities comply with CWA "effluent limitations or other limitations" and "any other appropriate requirement of State

3

law."[4]  33 U.S.C. § 1341(d).  CWA § 303 requires States to adopt water quality standards,[5] which are considered as "other limitations."[6]  PUD No. 1 of Jefferson Cty. V. Washington Dep't of Ecology, 511 U.S. 700, 712–713 (1994) [hereinafter PUD No. 1]; S.D. Warren Co. v. Maine Bd. of Environmental Protection, 547 U.S. 370, 386 (2006) [hereinafter S.D. Warren]; 33 U.S.C. § 1313 (addressing water quality standards).  In addition, a certifying agency can impose reasonable conditions and "limitations to assure compliance with state water quality standards[,]" which are considered as "appropriate requirement[s] of State Law" under § 401.[7]  PUD No. 1, at 713; 40 C.F.R. § 121.2(a)(3); 33 U.S.C. § 1341(d).  Here, the Vermont legislature adopted Vermont Water Quality Standards (VWQS) and delegated the administration of § 401 certification to ANR.[8]  10 V.S.A. § 1004; In re Clyde River Hydroelectric Project, 2006 VT 11, ¶ 3, 179 Vt. 606.

While FERC has jurisdiction to determine whether the § 401 certification complies with the CWA, this alone does not divest this Court of concurrent jurisdiction without explicit or

---

[4] CWA § 401 requires "[a]ny applicant for a Federal license or permit to conduct an activity . . . which may result into discharge to navigable waters, shall provide the licensing or permitting agency a certification" to the licensing or permitting agency.  33 U.S.C. § 1341(a)(1).  Should a State or agency fail or refuse to act upon a request for certification "within a reasonable period of time (which shall not exceed one year) after receipt of such request, the certification requirements of this subsection shall be waived . . . . [and] [n]o license or permit shall be granted until the certification required by this section has been obtained . . . ." Id.

[5] State water quality standards must be approved by the Environmental Protection Agency (EPA).  33 U.S.C. § 1313; 40 C.F.R. Part 131.

[6] While § 401(d) authorizes States to place restrictions on activities, this authority is limited.  PUD No. 1, at 712.  It is within States' authority, however, to ensure compliance. Id.  "Although § 303 is not one of the statutory provisions listed in § 401(d), the statute allows States to impose limitations to ensure compliance with § 301 of the Act, 33 U.S.C. § 1311. [§] 301 in turn incorporates § 303 by reference." Id. at 713 (citing 33 U.S.C. § 1311(b)(1)(C); see also H.R. Conf. Rep. No. 95–830, p. 96 (1977), U.S. Code Cong. & Admin. News 1977, pp. 4326, 4471 ("Section 303 is always included by reference where section 301 is listed")).

[7] The Supreme Court has historically given a more expansive reading to state power under the CWA.  Following S.D.Warren and PUD No. 1, Courts have noted these decisions interpret CWA as providing "opportunity [for] a state to implement its water quality law [as] substantial but only in the context of federal licensing procedures." Karuk Tribe of N. Cal. v. Cal. Reg'l Water Quality Control Bd., 183 Cal. App. 4th 330, 339, 108 Cal. Rptr. 3d 40, 48 n.6 (2010) (noting that "[W]here a federal law incorporates state requirements, it makes those requirements federal requirements.  For purposes of federal preemption analysis, the substantive requirements of state law applied through the water quality certification analysis become requirements of federal law").

[8] In an appeal of a § 401 certification, this Court is tasked with determining whether the Project complies with the provisions of the § 401 of the CWA and the VWQS.  See In re Morrisville Hydroelectric Project Water Quality, No. 103-9-16 Vtec, slip op. at 17–20 (Vt. Super. Ct. Envtl. Div. Jun. 13, 2017) (Walsh, J.) (clarifying the role of this Court); see also In re Morrisville Hydroelectric Project Water Quality, No. 103-9-16 Vtec, slip op. at 3 (Vt. Super. Ct. Envtl. Div. Jul. 20, 2017) (Walsh, J.) (deciding whether ANR complied with the one-year timeline in § 401).

implicit statutory directive.[9] See Alcoa Power Generating Inc. v. F.E.R.C., 643 F.3d 963, 971–972 (D.C. Cir. 2011) (citing 33 U.S.C. § 1341(a)(1)) (noting that validity of § 401 certification is a question of federal law); Roosevelt Campobello Int'l Park Comm'n v. U.S. E.P.A., 684 F.2d 1041, 1056 (1st Cir. 1982) (citation omitted) (stating that state courts have jurisdiction to review § 401 certification when addressing "validity of requirements imposed under state law or in a state's certification"); see California v. Arizona, 440 U.S. 59, 66–67 (1979) (discussing the presumption of concurrent jurisdiction).  Indeed, in most cases, a party seeking to challenge § 401 certification must do so through state courts as the applicable state "water quality standards . . . are more stringent than applicable federal standards."  City of Tacoma, Washington v. F.E.R.C., 460 F.3d 53, 67 (D.C. Cir. 2006) (noting that "[i]f the question regarding the state's [§] 401 certification is not the application of state water quality standards but compliance with the terms of [§] 401, then FERC must address it"); Keating v. F.E.R.C., 927 F.2d 616, 622 (D.C.Cir.1991).

CWA § 401(a)(1) provides that state certification requirements are waived if the state fails or refuses to act on a request for certification within "reasonable period of time (which shall not exceed one year)."[10]  33 U.S.C. § 1341.  Thus, a challenge to whether a state waived its authority involves a determination of compliance within the terms § 401(a)(1).  Recent decisions have strictly construed this provision to invalidate "coordinated withdrawal-and-resubmission schemes" intended to toll a state's one-year waiver period.  Hoopa Valley Tribe v. FERC, 913 F.3d 1099, 1103 (D.C. Cir. 2019), cert. denied, 140 S. Ct. 650 (Dec. 9, 2019); Hoopa Valley Tribe, Nevada Irrigation District, 171 FERC ¶ 61,029 (Apr. 16, 2020); Pac. Gas and Elec. Co., 170 FERC ¶ 61,232 (Mar. 19, 2020); S. California Edison Co., 170 FERC ¶ 61,135 (Feb. 20, 2020).

These decisions, however, do not limit FERC's ability to impose certification conditions where an agency has waived its authority.  S. Feather Water & Power Agency, 171 FERC ¶ 61,242 (Feb. 20, 2020) (stating that "[A]cceptance of [water quality] conditions is a matter with[in] [FERC]'s discretion" and considering the § 401 certification conditions as recommendations); Pac.

---

[9]  The presumption of concurrent jurisdiction can be rebutted "by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 478 (1981) (citation omitted).

[10]  "[T]he purpose of the waiver provision is to prevent a State from indefinitely delaying a federal licensing proceeding by failing to issue a timely water quality certification under [§] 401." Hoopa Valley Tribe v. FERC, 913 F.3d 1099, 1101 (D.C. Cir. 2019), cert. denied, 140 S. Ct. 650 (Dec. 9, 2019) (citing Alcoa Power Generating Inc., 643 F.3d 963, 972 (D.C. Cir. 2011)); Cent. Vermont Pub. Serv. Corp., 113 FERC ¶ 61,167, 61653 (Nov. 17, 2005).

Gas & Elec. Co., 170 FERC ¶ 61,232, 62786 (2020); S. California Edison Co., 170 FERC ¶ 61,135, 61953 (Feb. 20, 2020). FERC has routinely held that it has "the authority to consider whether to accept conditions contained in late-filed certifications." Cent. Vermont Pub. Serv. Corp., 113 FERC ¶ 61167, 61654 (Nov. 17, 2005); Twin Falls Canal Co., N. Side Canal Co., Ltd., 45 FERC ¶ 61423, 62305 (Dec. 15, 1988) ("[S]ince we believe the three conditions contained in the water quality certificate, [listing conditions] are necessary, we are including them as part . . . of the license."). MWL contends that a FERC ruling has the potential to declare ANR's certification void and reject any or all certification conditions. MWL asserts this may result in inconsistent decisions[11] or moot issues before this Court. As stated previously, the only issue remaining before this Court concerns compliance of flow rate conditions with the VWQS and ANR's definition of high quality habitat. In re Morrisville Hydroelectric Project Water Quality, No. 103-9-16 Vtec at 2 (Feb. 4, 2020). While this issue falls within the concurrent jurisdiction of this Court and FERC, its subject matter falls firmly within the application of state law and therefore "FERC's role is limited to awaiting, and then deferring to, the final decision of the state." City of Tacoma, 460 F.3d 53, 67 (D.C. Cir. 2006) (stating that when certification turns on questions of state law, FERC defers to the final decision of the state); Roosevelt Campobello, 684 F.2d 1041, 1056 (1st Cir. 1982). Therefore, this issue should proceed first though this Court and our decision may act as a recommendation or guidance for the imposition of conditions by FERC. As such, a FERC decision would not moot the issue remaining before this Court.

We recognize that a FERC decision on waiver may alter or support a decision by this Court. S. Feather Water & Power Agency, 171 FERC ¶ 61,242, at ¶ 9 (Jun. 18, 2020) (stating that issues of waiver are a federal question and must be resolved by reference to federal law). Indeed, there are three possible outcomes of a FERC decision. First, FERC may conclude the state has waived its authority and change or nullify the conditions. See Pac. Gas & Elec. Co., 170 FERC ¶ 61,232, 62782, 62782 (Mar. 19, 2020). Second, even if FERC concludes that state has waived its authority, FERC has discretion to impose the state's recommended water quality conditions. Id. at 62786 (holding that a state's conditions act as guidance or recommendations). Finally, should FERC

---

[11] This Court previously opined on whether ANR waived its authority under § 401 in addressing AW/VPC's amended Question 1 and concluded that "ANR complied with the one-year timeline in [§ 401]." In re Morrisville Hydroelectric Project Water Quality, No. 103-9-16 Vtec at 3 (Jul. 20, 2017) (granting summary judgment in favor of ANR on AW/VPC Question 1 pursuant to V.R.C.P. 56(f)). Therefore, the concern of inconsistent decisions exists regardless of a stay.

determine authority was not waived, ANR's conditions would be considered mandatory. 33 U.S.C. § 1341(d); Cent. Vermont Pub. Serv. Corp., 113 FERC ¶ 61,167 at 61654 (Nov. 17, 2005). Therefore, this Court's decision concerning compliance of flow rate conditions with the VWQS and ANR's definition of high quality habitat many be considered either mandatory or a recommendation. In these circumstances, we see no reason to stay a decision which may act as guidance for FERC or resolve the issues before this Court.

MWL also argues that a stay would not result in prejudice to any party as (1) incremental prostration of a four-year case is not unreasonable delay; (2) staying the case would not frustrate any party's ability to prosecute their case; (3) the grounds for petition are reasonable; and (4) a stay would merely suspend proceedings until FERC issues a decision on the Petition. ANR, joined by VNRC and TU, assert that a stay is highly prejudicial.

Generally, we consider a stay to be an "extraordinary remedy appropriate only when the movant's right to relief is clear." Howard Center Renovation Permit, No. 12-1-13 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Apr. 12, 2013) (Walsh, J.); Williams NOV, No. 152-11-17 Vtec slip op. at 1 (Vt. Super Ct. Envtl. Div. May 1, 2018) (Durkin, J.) ("[F]or a stay to be granted, the Court must be convinced that the party who would benefit from the stay has provided a sufficient showing in support of the stay request."). ANR, VNRC, and TU expressed concern that a stay, following years of protracted litigation, would further expend valuable resources and delay the implementation of flow conditions, contrary to the public interest in a timely ruling. We agree. Given the complex history of this proceeding and the evolving body of law surrounding § 401 waiver provisions, we find that there is an insufficient basis for a stay. In the absence of the necessary showing, we must **DENY** MWL's motion.

### Conclusion

For the foregoing reasons, we conclude that MWL's FERC Petition does not moot the remaining issue before this Court and it is in the interest of judicial efficiency to allow this proceeding to move forward. MWL has not demonstrated sufficient showing that the interests of justice and equity require a stay. Therefore, MWL's motion to stay is **DENIED**.

This Court will now consider the remand from the Supreme Court directing this Court to

7

consider again the flow-rate conditions for the Morrisville and Green River facilities. A separate written decision is issued concurrently with this EO.

So ordered.

Electronically signed on August 26, 2020 at 09:01 AM pursuant to V.R.E.F. 9(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

Notifications:
Elijah D. Emerson (ERN 5010), Attorney for Appellant Morrisville Water & Light Dept
Daniel P. Richardson (ERN 1502), Attorney for Cross Appellant American Whitewater & VPC, Inc
Interested Person Barrett M. Singer
Interested Person Christine Hallquist
Anthony L. Iarrapino (ERN 4781), Attorney for Petitioner to Intervene Friends of Green River Reservoir
For Informational Purposes Only Michael J. Wickenden
Jon Groveman (ERN 5336), Attorney for Cross Appellant Vermont Natural Resources Counci
Robert J. Carpenter (ERN 8064), Attorney for Cross Appellant VT Council of Trout Unlimited
Interested Person Town of Morristown
Kane H. Smart (ERN 4770), Attorney for Interested Person Agency of Natural Resources
Ryan M. Long (ERN 9918), Attorney for party 5 Co-counsel